No. 24-1727

*In the*

# United States Court of Appeals

*for the*

## Fourth Circuit

———————————————

CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA,
NETCHOICE, and COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION,

*Plaintiffs-Appellants,*

– v. –

BROOKE E. LIERMAN,

*Defendant-Appellee.*

———————————————

On appeal from a final judgment of the
United States District Court for the District of Maryland
Case No. 21-cv-410, Hon. Lydia Kay Griggsby

———————————————

**OPENING BRIEF FOR PLAINTIFFS-APPELLANTS**

———————————————

TARA S. MORRISSEY
JENNIFER B. DICKEY
  *U.S. Chamber Litigation Center*
  *1615 H Street NW*
  *Washington, DC 20062*
  *(202) 463-5337*

*Counsel for the Chamber of Commerce
of the United States of America*

MICHAEL B. KIMBERLY
CHARLES SEIDELL
  *McDermott Will & Emery LLP*
  *500 N. Capitol Street NW*
  *Washington, DC 20001*
  *(202) 756-8000*

*Counsel for all Appellants*

**CORPORATE DISCLOSURE STATEMENT**

Appellants are the Chamber of Commerce of the United States of America, NetChoice, and the Computer & Communications Industry Association. Each is a membership-based trade association.

None issues stock or has any parent corporation.

None is aware of any publicly held corporation with a direct financial interest in the outcome of the litigation by reason of a franchise, lease, other profit-sharing agreement, insurance, or indemnity agreement.

None is aware of any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding.

Although each relies on associational standing to assert injuries of all members affected by the Act, none is pursuing the claims of any particular member in a representative capacity.

/s/ *Michael B. Kimberly*

# TABLE OF CONTENTS

Corporate Disclosure Statement......................................................... i

Table of Authorities ........................................................................ iii

Introduction .................................................................................... 1

Jurisdiction ..................................................................................... 4

Issue Presented for Review ............................................................. 4

Statement of Facts .......................................................................... 4

    A.   The Digital Advertising Gross Revenues Tax Act............... 4

        1.   The Act's origins and impost....................................... 4

        2.   The pass-through provision ......................................... 6

    B.   Procedural background .................................................. 6

Summary of Argument .....................................................................11

Standard of Review ........................................................................ 14

Argument ...................................................................................... 14

I.    The pass-through provision is a content-based speech restriction that fails any level of scrutiny ................................................. 14

    A.   The pass-through provision is a content-based ban on political speech ................................................................. 15

    B.   The pass-through provision does not satisfy any level of constitutional scrutiny................................................... 23

        1.   The pass-through provision fails strict scrutiny ......... 23

        2.   Alternatively, the pass-through provision fails intermediate scrutiny under Central Hudson ............ 27

II.   *Moody* does not call for a different analysis............................ 30

    A.   The comparative analysis discussed in *Moody* is not useful when the law has no clearly legitimate sweep .................. 30

    B.   The district court misunderstood, and thus misapplied, the comparative analysis discussed in *Moody* ....................... 35

Conclusion..................................................................................... 40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*44 Liquormart v. Rhode Island,*
517 U.S. 484 (1996)................................................................... 27

*American Association of Political Consultants v. FCC,*
923 F.3d 159 (4th Cir. 2019) ...........................................14, 20, 23

*Americans for Prosperity Foundation v. Bonta,*
594 U.S. 595 (2021) ..................................................................... 3

*AT&T Corp. v. Rudolph,*
2007 WL 647564 (E.D. Ken. Feb. 27, 2007)............................... 29

*Baltimore Gas & Electric Co. v. Public Service Commission,*
501 A.2d 1307 (Md. 1986) ...........................................................17

*Barr v. American Association of Political Consultants, Inc.,*
591 U.S. 610 (2020) ...................................................... 32, 33, 36

*BellSouth Telecommunications v. Farris,*
542 F.3d 499 (6th Cir. 2008)................................................*passim*

*Bloom v. O'Brien,*
841 F. Supp. 277 (D. Minn. 1993) .................................. 28, 29, 34

*Burson v. Freeman,*
504 U.S. 191 (1992)............................................................ 25, 27

*Central Hudson Gas & Electric Corp. v. Public Service
Commission,* 447 U.S. 557 (1980) ................................... 20, 27, 28

*Chamber of Commerce v. Lierman,*
90 F.4th 679 (4th Cir. 2024) ............................................. 7, 8, 36

*Citizens United v. FCC,*
558 U.S. 310 (2010)........................................................... 22, 24

*City of Austin v. Reagan National Advertising,*
596 U.S. 61 (2022) ..................................................................... 19

**Cases—continued**

*Comptroller of Md. v. Comcast of Cal.*,
297 A.3d 1211 (Md. 2023) ........................................................ 8

*Consolidated Edison v. Public Service Commission*,
447 U.S. 530 (1980) ..................................................31, 38, 39

*Edenfield v. Fane*,
507 U.S. 761 (1993) .................................................................. 28

*Educational Media Co. at Virginia Tech v. Insley*,
731 F.3d 291 (4th Cir. 2013) ................................................ 28

*Expressions Hair Design v. Schneiderman*,
581 U.S. 37 (2017) ....................................................................17

*First National Bank of Boston v. Bellotti*,
435 U.S. 765 (1978) ................................................................ 25

*Garrison v. Louisiana*,
379 U.S. 64 (1964) .................................................................. 22

*McCulloch v. Maryland*,
17 U.S. (4 Wheat.) 316 (1819) ..............................................1

*Moody v. NetChoice*,
144 S. Ct. 2383 (2024) ....................................................*passim*

*National Institute of Family & Life Advocates v. Becerra*,
585 U.S. 755 (2018) ............................................................14, 19

*PETA v. North Carolina Farm Bureau Federation*,
60 F.4th 815 (4th Cir. 2023) ................................................ 26

*Police Department of Chicago v. Mosley*,
408 U.S. 92 (1972) .................................................................. 19

*Preston v. Leake*,
660 F.3d 726 (4th Cir. 2011) ................................................17

*R.A.V. v. City of St. Paul*,
505 U.S. 377 (1992) ........................................................*passim*

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015)................................................14, 19, 23, 25

**Cases—continued**

*Republican Party of Minnesota v. White,*
    536 U.S. 765 (2002) ..............................................................15, 25

*Reynolds v. Middleton,*
    779 F.3d 222 (4th Cir. 2015) .................................................. 26

*Sable Communications of California v. FCC,*
    492 U.S. 115 (1989) .................................................................. 32

*Shaw v. Hunt,*
    517 U.S. 899 (1996) .................................................................. 24

*Simon & Schuster, Inc. v. Members of N.Y. State Crime*
    *Victims Board*, 502 U.S. 105 (1991) .......................................14, 23

*Soderberg v. Carrion,*
    999 F.3d 962 (4th Cir. 2021) .......................................................14

*The Florida Star v. B.J.F.,*
    491 U.S. 524 (1989) ........................................................... 25, 26

*Turner Broadcasting Systems v. FCC,*
    512 U.S. 622 (1994) .................................................................. 24

*United States v. Bartow,*
    997 F.3d 203 (4th Cir. 2021) .................................................. 19

*United States v. Fresno County,*
    429 U.S. 452 (1977) .................................................................. 22

*United States v. Miselis,*
    972 F.3d 518 (4th Cir. 2020) .......................................................31

*Vidal v. Elster,*
    602 U.S. 286 (2024) .................................................................. 19

*White Coat Waste Project v. Greater Richmond Transit*
    *Company*, 35 F.4th 179 (4th Cir. 2022)............................30, 31, 35

*X Corp. v. Bonta,*
    116 F.4th 888 (9th Cir. 2024) .................................................. 33

**Statutes**

28 U.S.C.
    § 1291 ................................................................ 4
    § 1331 ................................................................ 4

47 U.S.C.
    § 151 note ........................................................... 6
    § 542(c)(1) .........................................................21

Md. Code, Tax-Gen.
    § 7.5-101 ............................................................ 4
    § 7.5-101(e)(1) ..................................................... 5
    § 7.5-101(f) ........................................................ 5
    § 7.5-102(b)(1) ..................................................... 5
    § 7.5-102(c) .................................................. *passim*
    § 7.5-103 ........................................................... 5
    § 7.5-201(b)(2) ..................................................... 5

Md. Com. Law
    § 13-301(1) .................................................... 29, 34
    § 13-303(2) .................................................... 29, 34

**Other Authorities**

138 Cong. Rec. S561-02 (daily ed. Jan. 29, 1992) ..............21

13B Wright & Miller, *Federal Practice and Procedure* §
    3533.2.1 (3d ed. 2022) ........................................... 8

## INTRODUCTION

If the power to tax truly is the power to destroy (*McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 431 (1819)), then it is most pernicious when the State is allowed to hide that it is exercising the power in the first place.

Here, Maryland has imposed a tremendously burdensome gross-revenues tax on digital advertising services delivered to users in the State. All agree that Appellants' members, who sell digital advertising services and thus pay the tax, are permitted to raise prices to recover its cost from consumers.

Appellants' members wish to convey to their customers that prices are rising in Maryland because their elected representatives have enacted this tax, and not because digital advertising companies are seeking additional profit. One of the most effective ways to communicate that message is to include an express tax-recovery fee, surcharge, or line-item on each customer's bill that clearly communicates that prices are going up because of state tax policy, and by how much.

But Maryland law forbids this. State lawmakers, evidently wishing to avoid political responsibility for rising prices attributable to their ill-conceived tax policy, enacted Section 7.5-102(c)—also referred to as the pass-through provision—to prohibit taxpayers from stating in a communication "to a customer who purchases the digital advertising services" the fact or magnitude of the tax "by means of a separate fee, surcharge, or line-item."

1

Section 7.5-102(c) is a presumptively unlawful content-based speech ban. The government may not silence those who wish to engage in protected speech unless it has the most compelling interest to justify it, and then only when there is no less restrictive means of advancing that interest. Even in the realm of commercial speech, which enjoys only slightly less protection under existing First Amendment precedent, the government must marshal evidence that its ban on protected speech is narrowly tailored to advance a substantial interest. Here, Maryland has barely attempted to satisfy those standards, and it flunks both.

The district court nonetheless held the pass-through provision constitutional. It did not do so on the ground that the law survives either strict or intermediate scrutiny, because it does not. Nor did it do so on the ground that the law does not burden protected speech, because it does. Rather, the district court held that the pass-through provision "has a plainly legitimate sweep, because the State of Maryland unquestionably possesses the power to levy taxes." JA85. From that puzzling non sequitur, the court concluded that the unconstitutional applications of the provision are not sufficiently "substantial" when "judged in relation to" its "legitimate sweep." *Id.* But in support of that conclusion, the court did not cite examples where the *application* of the pass-through provision is constitutional; it instead cited scenarios in which the provision does not apply at all, such as when a taxpayer "express[es] its

views or opinions about the tax" by means *other than* a separate fee, surcharge, or line-item on an invoice. JA86.

That approach is indefensible. The comparative analysis called for by decisions like *Moody v. NetChoice*, 144 S. Ct. 2383 (2024), is nothing new, and it is by definition satisfied (and thus requires no separate analysis) in cases like this one, involving a content-based speech ban that fails strict scrutiny. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 381 (1992). Ordinarily, "a plaintiff bringing a facial challenge must establish that . . . the law lacks [any] plainly legitimate sweep." *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 615 (2021) (cleaned up). That is the case here: A content-based speech ban that fails strict scrutiny lacks any such sweep and is facially unconstitutional. *R.A.V.*, 505 U.S. at 391.

The Supreme Court has recognized an alternative analysis for facial invalidation of a law that restricts both protected speech *and* non-expressive conduct. In such cases, the law "may be invalidated" on its face if "a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* But that analysis is logically out of place when the law applies *only* to speech and fails strict scrutiny, in which case there is no plainly legitimate sweep against which to compare the law's unconstitutional applications.

That is the case here. The pass-through provision is a content-based speech ban that fails the requisite level of scrutiny. *Moody*'s "judged in relation to" question thus answers itself, because the law has no legitimate sweep against which to make a comparison. The district court must be reversed, and the pass-through provision permanently enjoined.

## JURISDICTION

The district court had jurisdiction under 28 U.S.C. § 1331 and entered an order of dismissal on July 3, 2024. JA68. Appellants noticed an appeal on August 2, 2024. JA88. The district court entered a separate final judgment on August 8, 2024. JA90. Appellants filed an amended notice of appeal on August 13, 2024. JA91. This Court's jurisdiction rests on 28 U.S.C. § 1291.

## ISSUE PRESENTED FOR REVIEW

Does the pass-through provision, Section 7.5-102(c), facially violate the First Amendment?

## STATEMENT OF FACTS

### A.     The Digital Advertising Gross Revenues Tax Act

#### 1.     *The Act's origins and impost*

**a.** The Maryland Digital Advertising Gross Revenues Tax Act imposes a graduated gross-revenues tax on "digital advertising services," but not on advertising services through other means. Md. Code, Tax-Gen. § 7.5-101. "Digital advertising services" are defined as "advertisement services on a digital

interface, including advertisements in the form of banner advertising, search engine advertising, interstitial advertising, and other comparable advertising services." *Id.* § 7.5-101(e)(1). A "digital interface" is "any type of software, including a website, part of a website, or application, that a user is able to access." *Id.* § 7.5-101(f).

The Act's charge is assessed against "annual gross revenues derived from digital advertising services in the State." Md. Code, Tax-Gen. § 7.5-102(b)(1). The rate at which the assessment is imposed depends on a payer's "global annual gross revenues" (*id.* § 7.5-103 (emphasis added))—which is to say, on its extraterritorial economic activity:

- for firms with global annual gross revenues of $100 million or more, the Act imposes a 2.5% rate on all assessable revenue;
- for those with $1 billion or more, the Act imposes a 5.0% rate;
- for those with $5 billion or more, the Act imposes a 7.5% rate;
- for those with $15 billion or more, the Act imposes a 10% rate.

*Id.* Thus, a company's overall liability is a function of its out-of-State conduct. JA22 (¶¶ 36-37); JA33 (¶ 85).

Each company that "reasonably expects . . . annual gross revenues derived from digital advertising services in the state to exceed $1,000,000" in a given year must file "a declaration of estimated tax, on or before April 15 of that year." Tax-Gen § 7.5-201(b)(1). Such companies must also submit quarterly estimated payments. *Id.* § 7.5-201(b)(2).

### 2. *The pass-through provision*

A February 2021 amendment to the Act added a pass-through provision. That provision, which is the sole subject of this appeal, specifies that

> A person who derives gross revenues from digital advertising services in the State may not directly pass on the cost of the tax imposed under this section to a customer who purchases the digital advertising services by means of a separate fee, surcharge, or line-item.

Md. Code, Tax-Gen. § 7.5-102(c).

### B. Procedural background

**1.** Appellants filed the operative amended complaint adding a challenge to the pass-through provision shortly after its adoption. JA15.

As amended, Count I of the complaint alleges that the tax is preempted by the federal Internet Tax Freedom Act, which prohibits states from imposing "discriminatory taxes on electronic commerce." 47 U.S.C. § 151 note. Counts II and III allege that the tax violates the dormant Commerce Clause and Due Process Clause because it taxes, burdens, and punishes extraterritorial conduct. Count IV of the complaint alleges that the pass-through provision, if interpreted to prohibit companies from including separate fees relating to the Act on invoices, violates the First Amendment.

The state moved to dismiss, arguing that Appellants' challenge to the tax itself is barred by the Tax Injunction Act (TIA) and that Appellants otherwise fail to state a claim on the merits. Appellants cross-moved for summary

judgment, contending that the TIA does not apply to the Act because it imposes a punitive fee or penalty rather than a tax. They argued that they were entitled to judgment on the merits of each claim.

The district court dismissed Counts I–III as barred by the TIA. JA72.

Before the district court ruled on Appellants' challenge to the pass-through provision (Count IV), a Maryland trial court declared the Act unconstitutional in a separate challenge. The district court then dismissed Count IV as "prudentially moot."

**2.** Appellants appealed. *See Chamber of Commerce v. Lierman*, 90 F.4th 679 (4th Cir. 2024). The Court affirmed in part and reversed in part.

First, the Court affirmed the dismissal of Counts I-III under the federal Tax Injunction Act. That portion of the case is no longer live.

The Court vacated and remanded the district court's mootness holding with respect to the First Amendment challenge to the pass-through provision. *Chamber I*, 90 F.4th at 687-689. On that front, it rejected the State's argument that the TIA bars the First Amendment claim because "regardless of how the [pass-through] provision is conceived, it has no bearing on the validity of the underlying tax." *Id.* at 687.

Turning to mootness, the Court explained that the district court "erred in dismissing Count IV as moot" because "there was an impending appeal which could (and ultimately did) vacate the judgment, making the federal case

live again." *Id.* (citing 13B Wright & Miller, *Federal Practice and Procedure* § 3533.2.1 (3d ed. 2022)). But regardless, the Court observed that while the earlier "appeal was pending, the Maryland Supreme Court reversed the lower state court declaratory judgment" invalidating the Act's tax. *Id.* at 688 (citing *Comptroller of Md. v. Comcast of Cal.*, 297 A.3d 1211, 1228 (Md. 2023)). That decision was "not based on the merits but instead a jurisdictional defect." *Id.* The challenge to the pass-through provision was thus "unquestionably live now that the Maryland Supreme Court has vacated the judgment that had declared the Act unconstitutional." *Id.*

Rather than resolve the First Amendment challenge at that time, the Court determined that "whether that targeted activity is best understood as speech or conduct should be considered by the district court in the first instance." *Id.* at 687. The Court thus remanded for the district court "to consider the merits of Count IV's First Amendment challenge." *Id.*

**3.** On remand, the parties submitted further briefing concerning the First Amendment and interpretation of the pass-through provision.

Earlier in the case, the parties had agreed by stipulation that the pass-through provision prohibits taxpayers only from "directly" passing on the cost of the tax, which occurs "only when" the cost "is imposed on the customer by means of a 'separate fee, surcharge, or line-item'" stated on a customer invoice or the like." JA45. In its supplemental brief on remand, the State

affirmed that it "continues to adhere to the interpretation of the pass-through provision as expressed" in the parties' joint stipulation. JA49.

The State further explained that the pass-through provision "(1) does not affect an entity's internal-facing deliberations or accounting regarding the amount to charge for its services, (2) does not impose any restriction on the amount that an entity may in fact charge, and in turn (3) does not prohibit an entity from factoring the estimated cost of the tax into the price that it ultimately charges its customers." JA50.

Appellants agreed that the pass-through provision is best read as a speech regulation. JA57-JA58.

**4.** The district court granted the State's motion to dismiss the First Amendment challenge to the pass-through provision. JA087. It began by holding that, "to the extent that the statute prohibits directly passing the cost of the tax, 'by means of a separate fee, surcharge or line-item,'" it "regulate[s] speech." JA80. "[A] taxpayer who is subject to the [Act]'s tax is not free to convey its prices for digital advertising services in any way that it pleases." *Id.* "As Plaintiffs persuasively argue, this requirement restricts speech, because the Pass-Through Prohibition places restrictions on how a taxpayer can communicate to its customers about the tax." JA83.

From there, however, the district court did not proceed to apply strict or intermediate scrutiny to the provision. Instead, it held that Appellants had

"not met their burden to show that 'a substantial number of [the provision's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" JA84 (quoting *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2397 (2024)). The court rejected Appellants' argument that the provision lacks any plainly legitimate sweep "because the State of Maryland unquestionably possesses the power to levy taxes," and the Act (as a whole) "advances the State's interest in exercising the power to levy taxes, so that the state can generate revenue to fund improvements to public education from the funds generated through the tax." JA85.

Next, the court held that "the degree of protected speech implicated by the [Act]'s Pass-Through Prohibition is not substantial." *Id.* But in purporting to describe several "applications of the Pass-Through Prohibition that are constitutional" (JA86), the court in fact described various scenarios in which the provision does not apply at all. These included: (1) when a taxpayer expresses its "views or opinions about the tax" on an invoice, and the views or opinions are not stated as a fee, surcharge, or line-item; (2) when a taxpayer "communicat[es] that an invoice or bill is for a higher amount, due to the imposition of the [digital advertising] tax," but that fact is not stated as a fee, surcharge, or line-item; and (3) "when a taxpayer does not *directly* pass on the tax cost to its customer" at all, which would be the case only if the taxpayer necessarily has not identified rising prices using a fee, surcharge, or line-item. JA86

(emphasis added). On that basis, the court concluded that Appellants had not "show[n] that a substantial number of the statute's applications are unconstitutional." JA80.

## SUMMARY OF ARGUMENT

**I. The pass-through provision is a content-based speech restriction that fails any level of scrutiny.** To start, Section 7.5-102(c) regulates speech and nothing more. All agree that the pass-through provision does not prohibit taxpayers from raising prices to recoup Maryland's digital advertising tax. Nor does it restrain the way that taxpayers conduct internal accounting. The only thing it prohibits is "passing on" the cost of the tax *to consumers* "by means of" a separately stated charge on a financial statement that identifies the fact and magnitude of the tax as a separate fee, surcharge, or line-item.

The pass-through provision is not merely a restriction of speech, but a content-based speech ban. Separate fees, surcharges, or line-items that identify Maryland's digital advertising tax are forbidden. Other line-items are not. The law thus applies to particular speech because of the topic discussed or the idea or message expressed. Moreover, the topic is a political one, touching on the core protections of the First Amendment. The pass-through provision forbids payers of Maryland's digital advertising tax from announcing who bears political responsibility for rising prices in the place most likely to capture attention: an invoice that states the fact and size of the tax.

The pass-through provision does not satisfy any potentially applicable level of constitutional scrutiny. Concerning strict scrutiny, the State has never meaningfully attempted to defend the pass-through provision as narrowly tailored to serve a compelling governmental interest. The legislative history indicates that the ban's only purpose was to ensure that the tax is borne by large digital advertising companies, and not by local Maryland consumers. But that is no basis for censoring speech. And in any event, the provision is not narrowly tailored to such a goal. It is underinclusive because it does not prohibit actually passing on the tax, and it is overinclusive because there is no evidence that banning taxpayers from stating the tax as a separate fee, surcharge, or line-item will prevent them from passing it on as part of their overall prices.

The same tailoring flaws doom the provision under intermediate scrutiny, which requires narrow tailoring to a substantial governmental interest. Thus, under any level of scrutiny, the pass-through provision is facially unconstitutional.

**II. The Supreme Court's recent decision in *Moody* does not call for a different analysis.** The district court correctly held that the pass-through provision is a speech restriction, but it did not conduct an analysis under either strict or intermediate scrutiny. It instead purported to apply the comparative analysis discussed in *Moody v. NetChoice*, 144 S. Ct. 2383 (2024), which calls on courts to identify the full range of applications of the law and weigh the

constitutionally impermissible applications against the permissible ones. The court badly misapplied that analysis.

To begin with, the premise of the comparative analysis discussed in *Moody* is that the law *has* constitutional applications. That may be the case when, for example, a challenged law restrains both speech and non-expressive conduct. But that is not the case here—again, the pass-through provision is a content-based restriction of speech that fails strict scrutiny. The comparative analysis is thus unnecessary, because the pass-through prohibition has no legitimate sweep against which to compare its unlawful applications.

The district court's contrary decision is based on a fundamental misunderstanding of what provision is at issue. The court began its analysis from the premise that the pass-through provision has a legitimate sweep because Maryland may levy taxes. But that is a non sequitur; Appellants are not here challenging the tax. The pass-through provision is all that is at issue, and it has no legitimate sweep. The district court then attempted to compare the unconstitutional applications of the provision to its *non*-applications. Had the district court correctly compared the unconstitutional applications of the provision to its total number of actual applications, it would have seen that the two are one and the same. Thus, the pass-through provision is properly struck on its face under *Moody*.

This case is not so complicated. Maryland has banned the payers of a tax from identifying the tax on customer communications using a separate fee, line-item, or surcharge. That is a straightforward content-based restriction of political speech. And the State has not justified the restriction under any level of scrutiny. The pass-through provision thus should have been struck on its face as a clearcut First Amendment violation.

## STANDARD OF REVIEW

The Court reviews the grant of a motion to dismiss *de novo*. *Soderberg v. Carrion*, 999 F.3d 962, 967 (4th Cir. 2021). When "confronted with a facial constitutional challenge to a statute," the Court "review[s] the various issues de novo." *American Association of Political Consultants v. FCC*, 923 F.3d 159, 165 (4th Cir. 2019) (*AAPC*).

## ARGUMENT

## I.    THE PASS-THROUGH PROVISION IS A CONTENT-BASED SPEECH RESTRICTION THAT FAILS ANY LEVEL OF SCRUTINY

As the Supreme Court has held time and time again, a content-based speech ban is unconstitutional in all its applications unless the State satisfies strict scrutiny. *See, e.g.*, *National Institute of Family & Life Advocates v. Becerra*, 585 U.S. 755, 766 (2018) ("NIFLA"); *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015); *R.A.V.*, 505 U.S. at 395; *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Board*, 502 U.S. 105, 115 (1991). This maxim

has special force with respect to bans on political speech. *See, e.g.*, *Republican Party of Minnesota v. White*, 536 U.S. 765, 774 (2002). That describes the law at issue here, and the State has not satisfied any level of scrutiny to save it.

## A. The pass-through provision is a content-based ban on political speech

We begin with the threshold question of whether the pass-through provision regulates speech. The district court correctly held that it does.

**1.** The pass-through provision states that a taxpayer may not "directly" "pass on" the tax imposed by the Maryland Digital Advertising Gross Revenues Tax Act "by means of" a "separate fee, surcharge, or line-item." Md. Code, Tax-Gen. § 7.5-102(c).

This language is clear in both meaning and practice: It forbids taxpayers from "passing on" the cost of the Maryland digital advertising tax to their consumers "by means of" a separately stated charge on a financial statement that identifies the fact and magnitude of any price increase that is attributable to the tax. A communication that does not include a separate fee, surcharge, or line-item calling out the fact and magnitude of the Maryland digital advertising tax is permissible. But one that includes such additional information—one that expressly attributes rising prices to Maryland tax policy by means of a line item on a bill—violates the statute.

The parties agree, and the text leaves no doubt, that Section 7.5-102(c) is not a price-control statute, and it does not regulate conduct. Taxpayers are free to raise their prices so long as they do not do so "directly," meaning they do not do so "by means of" a "separate fee, surcharge, or line-item." Md. Code, Tax-Gen. § 7.5-102(c). Thus, taxpayers can pass the cost of the tax on through a price increase that exactly matches the cost of the tax. What the taxpayers may not do is expressly attribute the price increase to the tax using a separate fee, surcharge, or line item on invoices or billing statements. The Comptroller was clear about this in her brief below: "in light of the statute's use of the term 'directly,' it is clear that the pass-through provision is implicated only when an entity *expressly* imposes on its customers the responsibility for the tax (and only by means of a 'separate fee, surcharge, or line-item')." JA50.

The Comptroller continued, and Appellants agree: "The pass-through provision therefore (1) does not affect an entity's internal-facing deliberations or accounting regarding the amount to charge for its services, (2) does not impose any restriction on the amount that an entity may in fact charge, and in turn (3) does not prohibit an entity from factoring the estimated cost of the tax

into the price that it ultimately charges its customers." *Id.*[1]

**2.** As a restriction on communications with customers, the pass-through provision is obviously a restriction on speech. Undeniably, it regulates what companies may say to their customers on invoices.

Like the New York law in *Expressions Hair Design v. Schneiderman*, 581 U.S. 37 (2017), the pass-through provision does not "regulate[] the amount a [taxpayer] can collect" from its customers; rather, it "regulates [only] how sellers may communicate their prices." *Id.* at 47. A seller is thus "free to charge" "any . . . amount" it likes for its services, regardless of the reason for any price increases (including tax recoupment). *Id.* But a taxpayer "is not free to say $10, with a 3% [tax recovery] surcharge" or "$10, plus $0.30 for [tax recoupment]." *Id.* "In regulating the communication of prices rather than prices themselves," the provision thus "regulates speech." *Id.* at 48.

---

[1]    Although the best reading of the statute supports this conclusion, this Court also generally "give[s] deference to the State's interpretation of [a state] statute." *Preston v. Leake*, 660 F.3d 726, 739 (4th Cir. 2011). Such deference is a matter of respect for state courts' authority over matters of state law. In Maryland, "the contemporaneous interpretation of a statute by the agency charged with its administration is entitled to great deference." *Baltimore Gas & Electric Co. v. Public Service Commission*, 501 A.2d 1307, 1315 (Md. 1986). The degree of deference required "depends upon a number of considerations." *Id.* When an interpretation is the product of considered decisionmaking in "contested adversarial proceedings," the interpretation should be accorded "the persuasiveness due a well-considered opinion of an expert body." *Id.*

Two simple hypotheticals demonstrate the point:

**ACME DIGITAL ADVERTISING**
**INVOICE – February 1, 2022**

January 2022 advertising services: $900
Maryland Digital Advertising Tax recoupment fee: $100

Total due: $1000

**SMITH & SONS DIGITAL ADVERTISING CO.**
**INVOICE – February 1, 2022**

Total due for January 2022 advertising services: $1000*
*\* Includes a 10% surcharge for the Maryland Digital Advertising Tax, which Smith & Sons must pay to the Comptroller of Maryland pursuant to Md. Tax-Gen. § 7.5-102.*

Both of these examples would be unlawful under Section 7.5-102(c). Yet the same companies, charging the same prices for the same services, would comply with Section 7.5-102(c) by censoring their message:

**ACME DIGITAL ADVERTISING**
**INVOICE – February 1, 2022**

January 2022 advertising services: ~~$900~~ $1000
~~Maryland Digital Advertising Tax recoupment fee: $100~~

Total due: $1000

**SMITH & SONS DIGITAL ADVERTISING CO.**
**INVOICE – February 1, 2022**

Total due for January 2022 advertising services: $1000~~*~~
*~~\* Includes a 10% surcharge for the Maryland Digital Advertising Tax, which Smith & Sons must pay to the Comptroller of Maryland pursuant to Md. Tax-Gen. § 7.5-102.~~*

This is a clear case of censorship.

**3. Content-based.** The pass-through provision is not merely a restriction of speech, but a content-based speech ban. The First Amendment's most basic

principle is that "government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *United States v. Bartow*, 997 F.3d 203, 207 (4th Cir. 2021) (quoting *Police Department of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)). In evaluating whether a regulation violates the First Amendment, courts therefore "distinguish between content-based and content-neutral regulations of speech." *Vidal v. Elster*, 602 U.S. 286, 292 (2024)

"Content-based regulations" are those that "target speech based on its communicative content." *NIFLA*, 585 U.S. at 766 (quoting *Reed*, 576 U.S. at 163). A law is content-based if it "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed*, 576 U.S. at 163. Such laws "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *NIFLA*, 585 U.S. at 766.

The pass-through provision is just such a law. Line-items that concern the digital advertising tax are forbidden. Other line-items are not. The law thus "applies to particular speech because of the topic discussed or the idea or message expressed." *City of Austin v. Reagan National Advertising*, 596 U.S. 61, 69 (2022) (cleaned up) (quoting *Reed*, 576 U.S. at 163). Put another way, distinguishing between a permissible and impermissible invoice under Section 7.5-102(c) requires an analysis of "the message [the] speaker conveys." *Reed*,

576 U.S. at 163; *see also AAPC*, 923 F.3d at 166 (finding statute content-based where "automated calls made to cell phones 'solely to collect a debt owed to or guaranteed by the United States'" were permitted but "automated calls made to cell phones that deal with other subjects . . . do not qualify for the debt-collection exemption").

**4. Political speech.** The district court correctly recognized that, by limiting the content and manner of communicating important messages to customers, the pass-through provision regulates speech. JA82. In dicta, however, the court commented that the restriction "can be best categorized as commercial speech" because the statements are "expression related solely to the economic interests of the speaker and its audience." JA75 (quoting *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 561 (1980)). That characterization is wrong. The fact that the banned speech relates to economic interests does not mean that it is commercial speech under First Amendment precedents. Speech relating to economic interests can be, and is here, classic political speech.

On this score, the pass-through provision is indistinguishable from the statutory provision struck down in *BellSouth Telecommunications v. Farris*, 542 F.3d 499, 506 (6th Cir. 2008). There, as here, the State did "not wish to regulate the [taxpayers]' speech about the new tax in any venue but one: a commercial invoice." *Id.* at 504. But "what is going on here is more than just

a debate about how best to sell toothpaste." *Id.* at 505. The pass-through provision forbids payers of the tax from "announcing who bears political responsibility" for the new charge in the "forum most likely to capture voters' attention: an invoice that displays a predictable consequence of the tax." *Id.* A line-item identifying a separate amount attributable to the tax conveys that a price increase is not the result of economic opportunism by the company, but the ill-conceived actions of elected officials.

In parallel contexts, Congress has recognized the importance of precisely this kind of speech. For example, in its regulation of cable operators, Congress has specified that local regulators may not prohibit the identification "as a separate line item on each regular bill of each subscriber" of "[t]he amount of the total bill assessed as a franchise fee and the identity of the franchising authority to which the fee is paid." 47 U.S.C. § 542(c)(1). The point of "subscriber bill itemization [is] to give the cable companies an opportunity to itemize these so-called hidden costs, to explain to the people" why prices are rising, so they "will know it is not just the cable company jacking up the prices" but excessive "taxes which the cable has to pay." 138 Cong. Rec. S561-02, S569 (daily ed. Jan. 29, 1992) (statement of Sen. Lott). Here, the pass-through provision muzzles that kind of speech, "keeping consumers (and voters) in the dark about the tax and its impact on their wallets" and permit-

ting elected officials who are in fact responsible for increasing prices to "duck political responsibility." *BellSouth*, 542 F.3d at 505.

The freedom to speak on "public issues" and to help "hold officials accountable to the people" is "an essential mechanism of democracy." *Citizens United v. FCC*, 558 U.S. 310, 339 (2010); *accord Garrison v. Louisiana*, 379 U.S. 64, 74-75 (1964) ("[S]peech concerning public affairs is more than self-expression; it is the essence of self-government."). This is particularly true for the government's power to tax, as to which the primary security against abuse is the ballot box: "A State's constituents can be relied on to vote out of office any legislature that imposes an abusively high tax on them." *United States v. Fresno County*, 429 U.S. 452, 458-59 (1977); *accord BellSouth*, 542 F.3d at 505 ("It takes little imagination to envision why an elected official would prefer to evade accountability for a tax increase."). The pass-through provision thus strikes at the core of political speech—the heartland of the First Amendment's strong protections.

Of course, Appellants' claim would succeed regardless of whether this Court categorizes the speech at issue as political speech or commercial speech. The State has never seriously attempted to justify the pass-through provision under any level of constitutional scrutiny. And no such showing is possible. But that this speech implicates core matters of political concern underscores the importance of the claim here.

**B.** **The pass-through provision does not satisfy any level of constitutional scrutiny**

As a content-based ban on political speech, the pass-through provision must pass strict scrutiny or otherwise be struck down on its face. Even if the provision did not restrict core political speech, it would be subject at least to intermediate scrutiny. The State has not met its burden under either standard.

**1.** *The pass-through provision fails strict scrutiny*

Under the First Amendment's Free Speech Clause, "[c]ontent-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 576 U.S. at 163 (citing *R.A.V.*, 505 U.S. at 395); *accord Simon & Schuster*, 502 U.S. at 115); *AAPC*, 923 F.3d at 167 ("Because the debt-collection exemption is a content-based restriction on speech, it can only pass constitutional muster if it satisfies strict scrutiny review.").

"Strict scrutiny is a rigorous standard of review that requires the speech restriction to advance a sufficiently important governmental objective—that is, an objective of the 'highest order.'" *AAPC*, 923 F.3d at 167 (quoting *Reed*, 576 U.S. at 172). Here, the State has not cleared that high hurdle.

**a. Compelling interest.** To establish a compelling interest, the State would have to (1) identify an interest that is "some pressing public necessity,

some essential value that has to be preserved" (*Turner Broadcasting Systems v. FCC*, 512 U.S. 622, 680 (1994) (O'Connor, J., concurring)), and (2) show that preservation of that compelling value was the legislature's "actual purpose" for the speech restriction, as opposed to a *post hoc* rationalization invented for litigation (*Shaw v. Hunt*, 517 U.S. 899, 908 n.4 (1996)).

As a starting point, the State's interest in enacting the underlying gross revenues tax is immaterial, because the tax is not challenged here. *Cf.* JA85 (district court noting that "the State of Maryland unquestionably possesses the power to levy taxes"). The pass-through provision was enacted independent of the tax, which was adopted by separate legislation one year earlier. The question here is only whether the State has a compelling governmental interest for the pass-through provision and its content-based speech ban.

It does not. Nothing in the text of Section 7.5-102(c) or in the legislative history even hints at a compelling interest for the speech ban. The legislative history indicates that its only purpose was to ensure that the tax is borne by large digital advertising companies, and not by local Maryland consumers. *See also, e.g.*, Dkt. 72, at 5. But wishing to ensure that disfavored speakers bear the brunt of a punitive government levy is not a legitimate, let alone compelling, interest for a speech ban. "[I]n the context of political speech, the Government may [not] impose restrictions on certain disfavored speaker[s]" just for the sake of disfavoring them. *Citizens United*, 558 U.S. at 341.

**b. Narrow tailoring.** Nor is the pass-through provision narrowly tailored. "To survive strict scrutiny," the State "must do more than [identify] a compelling state interest—it must demonstrate that its law is necessary to serve the asserted interest" (*Burson v. Freeman*, 504 U.S. 191, 211 (1992)) and "that it does not unnecessarily circumscribe protected expression" in the process (*Republican Party*, 536 U.S. at 775). Even assuming that the State had a legitimate interest in ensuring that large digital advertising companies alone internalize the cost of the tax, the pass-through provision would be "both under-inclusive and overinclusive" relative to that goal. *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 793 (1978).

Take first under-inclusion. A content-based regulation of speech must "satisfactorily accomplish[] its stated purpose." *The Florida Star v. B.J.F.*, 491 U.S. 524, 541 (1989). A regulation that is "underinclusive" in scope—one that is ineffectual in advancing the interests invoked to justify it—"raises serious doubts about whether [the government] is, in fact, serving, with [the regulation], the significant interests" asserted. *Id.* at 540; *see also Reed*, 576 U.S. at 172 (holding that a law that is "hopelessly underinclusive" fails strict scrutiny).

Here, prohibiting taxpayers from stating fees and line-items on invoices does not prevent taxpayers from raising prices to recoup the cost of the tax. As the State has consistently admitted, the pass-through provision "does not

impose any restriction on the amount that an entity may in fact charge" and thus "does not prohibit an entity from factoring the estimated cost of the tax into the price that it ultimately charges its customers." JA50. It is thus ineffectual in ensuring the tax is borne by large digital advertising companies.

And to the extent that the State's goal was to ensure that digital advertising companies bear the political brunt of the tax, the fact that it targets only the most direct means of identifying the pass-through prohibition to customers (as opposed to all speech doing so) undermines the goal. "Such facial underinclusiveness raises serious doubts about whether the State is, in fact, serving, with this statute, the significant interests invoked." *PETA v. North Carolina Farm Bureau Federation*, 60 F.4th 815, 833 (4th Cir. 2023) (cleaned up) (quoting *The Florida Star*, 491 U.S. at 540).

The pass-through provision is also overinclusive because it restricts more speech than necessary (if any is necessary at all) to achieve the State's supposed purpose. There is no evidence that barring *any* expressly-stated surcharges, fees, and line-items, let alone all of them, makes it more likely the digital advertising companies will decline to raise prices to recoup the tax, substantially advancing the stated interest. At the very least, such a claim demands "evidentiary support," which here is lacking. *Reynolds v. Middleton*, 779 F.3d 222, 231 (4th Cir. 2015). This therefore is not "the rare case" in

which a content-based speech ban withstands strict scrutiny. *Burson*, 504
U.S. at 211.

### 2. *Alternatively, the pass-through provision fails intermediate scrutiny under* Central Hudson

The State also cannot justify the ban under *Central Hudson*'s interme-
diate scrutiny. Even under *Central Hudson*, "bans against truthful, nonmis-
leading commercial speech" (such as the one at issue here) are evaluated with
"special care" and "rarely survive constitutional review." *44 Liquormart v.
Rhode Island*, 517 U.S. 484, 503-504 (1996) (plurality) (quoting *Central
Hudson*, 447 U.S. at 566 n.9). That is because:

> [i]t is the State's interest in protecting consumers from [the] com-
> mercial harms [of deception or overreaching] that provides the
> typical reason why commercial speech can be subject to greater
> governmental regulation than noncommercial speech. Yet bans
> that target truthful, nonmisleading commercial messages rarely
> protect consumers from such harms. Instead, such bans often
> serve only to obscure an underlying governmental policy . . . [and]
> impede debate over central issues of public policy.

*Id.* at 502-503 (cleaned up). That is precisely the case here—the pass-through
prohibition censors truthful, non-misleading speech that otherwise would
bring attention to misguided tax policies for which lawmakers wish to avoid
accountability. It does not come close to surviving *Central Hudson*.

The only difference between intermediate and strict scrutiny is that
*Central Hudson*'s first prong requires the Court to "ask whether the asserted

governmental interest is substantial" rather than compelling. *Educational Media Co. at Virginia Tech v. Insley*, 731 F.3d 291, 299 (4th Cir. 2013) (quoting *Central Hudson*). A substantial interest is still a high bar—*Central Hudson*, after all, calls for more than mere "rational-basis review." *Edenfield v. Fane*, 507 U.S. 761, 768 (1993). The state bears the burden, and "mere speculation or conjecture" is insufficient; the State "must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Id.* at 770-771. That is, "[t]he regulation may not be sustained if it provides only ineffective or remote support for the government's purpose." *Central Hudson*, 447 U.S. at 564.

Here, again, the State has not cited any substantial objective that the pass-through provision was designed to achieve. In commercial-speech cases, the interest typically asserted is protecting consumers from misleading statements. But the State has never asserted an interest in preventing misleading speech. Nor is there anything misleading about simple line-items and surcharges calling out the fact and magnitude of tax burdens. *See Bloom v. O'Brien*, 841 F. Supp. 277, 282 (D. Minn. 1993) ("A bill which accurately states the amount and nature of the charge is not inherently misleading."). And the pass-through provision is a categorical ban on *all* separate fees,

surcharges, and line-items—its text draws no distinction between truthful and misleading ones.[2]

Even if the State had ever advanced an interest sufficient to justify Section 7.5-102(c)—it has not—the categorical speech ban would have been unnecessary to achieve it. Misleading statements in commercial transactions are already banned by the Maryland Consumer Protection Act (Md. Com. Law § 13-303(2)) and Unfair or Deceptive Trade Practices Act (*id.* § 13-301(1)).

Courts have repeatedly invalidated similar measures prohibiting companies from stating taxes and fees imposed by the government as line-items on bills to customers. *See, e.g., BellSouth*, 542 F.3d at 506-10 (Kentucky law prohibiting telecommunications providers from separately identifying a tax on bills violated First Amendment); *AT&T Corp. v. Rudolph*, 2007 WL 647564, at *1, *13 (E.D. Ken. Feb. 27, 2007) (Kentucky law prohibiting companies from collecting tax "directly from purchasers" by "separately stating the tax on the bill to purchasers" violated First Amendment); *Bloom*, 841 F. Supp. at 280-281 (Minnesota law prohibiting healthcare providers from itemizing

---

[2] Years ago, during the third round of supplemental briefing before the district court, the State surmised that "[a]llowing a digital ad service provider to pass on the tax cost directly to customers might result in disguising or underreporting of 'annual gross revenues,' which the statute requires to be computed before subtracting any taxes." Dkt. 72, at 5. The State has not since repeated that unsupported rationale for the pass-through provision.

gross revenue tax on patient's bill likely violated First Amendment). This Court should do the same.

## II. *MOODY* DOES NOT CALL FOR A DIFFERENT ANALYSIS

The district court declined to engage in any of the foregoing analysis. It recognized that Section 7.5-102(c) is a regulation of expression, but it did not identify it as a content-based speech ban or apply strict or intermediate scrutiny to determine its lawfulness under the First Amendment. The court instead held—without briefing and only two days after *Moody* came down—that Appellants' claim failed under the facial analysis described in *Moody*. But the district court's understanding of *Moody* was flawed in multiple independent respects and must be reversed.

### A. The comparative analysis discussed in *Moody* is not useful when the law has no clearly legitimate sweep

**1.** *Moody* broke no new First Amendment ground. For more than 50 years, the Supreme Court has recognized two ways in which plaintiffs may prevail on facial First Amendment challenges.

First, like any plaintiff bringing any facial constitutional challenge, a First Amendment plaintiff "may demonstrate that no set of circumstances exists under which the law would be valid, or that the law lacks any plainly legitimate sweep." *White Coat Waste Project v. Greater Richmond Transit Company*, 35 F.4th 179, 203-204 (4th Cir. 2022). That is the case when a

content-based speech restriction fails strict scrutiny. *See, e.g.*, *Consolidated Edison v. Public Service Commission*, 447 U.S. 530, 540 (1980). A law that bans speech and fails strict scrutiny—even if it covers some speech that might in theory be prohibited by a different law narrowly tailored to a different purpose—cannot lawfully be applied *ever*, to any expression. *See R.A.V.*, 505 U.S. at 383-84. That is to say, an unjustified, content-based speech ban is simply "incapable" of constitutional application, regardless of the "identity" of the speaker or the content of her speech. *White Coat Waste Project*, 35 F.4th at 205. It thus has no "plainly legitimate sweep" and the comparative analysis in *Moody* is satisfied a fortiori and thus effectively unnecessary. *See United States v. Miselis*, 972 F.3d 518, 530 (4th Cir. 2020).

By contrast, when a law does have a plainly legitimate sweep—as may be the case when it regulates both speech and non-expressive conduct—a special First Amendment standard is available: The plaintiff may show that "a substantial number of its applications are unconstitutional" as applied to speech, "judged in relation to the statute's plainly legitimate sweep" as applied to non-speech. *White Coat Waste Project*, 35 F.4th at 203. In this way, the test for a facial First Amendment challenge is "less demanding" than in other contexts. *Moody*, 144 S. Ct. at 2397. But this analysis comes into play only when a law *has* some plainly legitimate sweep—meaning there is some

substantial set of applications that does not involve impermissibly burdening speech. That circumstance is absent here.

A series of cases illustrate the point. In *Sable Communications of California v. FCC*, 492 U.S. 115 (1989), the Court applied strict scrutiny to facially invalidate a federal statute prohibiting "indecent" commercial telephone messages. *Id.* at 126-131. The Court concluded that the statute, which imposed a content-based restriction on speech in all applications, was "not a narrowly tailored effort to serve the compelling interest of preventing minors from being exposed to indecent telephone messages." *Id.* at 131. "Because the statute's denial of adult access to telephone messages which are indecent but not obscene far exceeds that which is necessary to limit the access of minors to such messages," the Court held "that the ban does not survive constitutional scrutiny." *Id.* The failure to satisfy strict scrutiny ended the inquiry and justified invalidating the law on its face.

Similarly, just a few years before *Moody*, a plurality of the Court applied strict scrutiny to facially invalidate a portion of a federal statute prohibiting certain robocalls. *Barr v. American Association of Political Consultants, Inc.*, 591 U.S. 610 (2020) (plurality op.). The Court reaffirmed that "[c]ontent-based laws are subject to strict scrutiny." *Id.* at 618. It concluded that "the robocall restriction with the government-debt exception is content-based." *Id.* at 621. And it noted the government's concession that it could not satisfy

strict scrutiny. *Id.* That was enough for the Court to "invalidat[e] the 2015 government-debt exception" on its face "and sever[] it from the remainder of the statute." *Id.* at 636. No comparative analysis was needed.

Finally, in the most extensive treatment of *Moody* by a court of appeals to date, the Ninth Circuit ruled in *X Corp. v. Bonta*, 116 F.4th 888 (9th Cir. 2024), that "a facial challenge is permissible" when the law burdens expression "in every application" and fails strict scrutiny. *Id.* at 899. The court there held that a California law requiring private parties to engage in certain speech was "not narrowly tailored" and, as here, "the State does not attempt to argue that the law survives strict scrutiny." *Id.* at 903. The court thus ordered the law enjoined categorically without engaging in the kind of comparative analysis discussed in *Moody*. *Id.* at 904.

The common thread running through these cases is that, where a statute is construed to apply only to speech, and it fails the applicable level of scrutiny, the law must be struck on its face.

**2.** As we have shown, the pass-through provision here is a pure speech restriction that fails constitutional scrutiny of any kind, and it therefore is unlawful in every application. *BellSouth*, 542 F.3d at 505. Because it has no plainly legitimate sweep, there is no occasion to reach the comparative inquiry discussed in *Moody*. *See R.A.V.*, 505 U.S. at 391.

It is no answer to these conclusions to hypothesize that the pass-through provision could lawfully be applied to misleading or untruthful statements. A law narrowly tailored to forbid only misleading statements might theoretically pass constitutional muster, but that is not *this* law. *Cf. Bloom*, 841 F. Supp. at 282 ("A bill which accurately states the amount and nature of the charge is not inherently misleading.").

The state has never asserted, much less demonstrated, an interest in prohibiting misleading surcharges as the motivating objective for Section 7.5-102(c). Nor has it shown that misleading surcharges are an actual problem in need of addressing. They surely are not, given (again) that misleading statements in commercial transactions are already banned by the Maryland Consumer Protection Act (Md. Com. Law § 13-303(2)) and Unfair or Deceptive Trade Practices Act (*id.* § 13-301(1)). Moreover, the pass-through provision is nowise tailored to any such objective.

The possibility that the State might enforce the pass-through provision against misleading speech—or that some different law might be sufficiently tailored to that objective—cannot save Section 7.5-102(c) from facial invalidation. As the Supreme Court has explained, "the power to proscribe [speech] on the basis of *one* content element (*e.g.*, obscenity) does not entail the power to proscribe it on the basis of *other* content elements." *R.A.V.*, 505 U.S. at 386. Just so here.

**B.** **The district court misunderstood, and thus misapplied, the comparative analysis discussed in *Moody***

Against this background, the district court's approach to *Moody* was unavoidably faulty. The court misunderstood which provision it was supposed to be assessing, both in terms of identifying the legitimate sweep of the law and the overall applications of the law.

**a.** The district court's first error was concluding that the pass-through provision has a legitimate sweep because "Maryland unquestionably possesses the power to levy taxes." JA85.

The relevant "legitimate sweep" to be measured is the sweep of the provision being challenged (here, the pass-through provision), not the broader statute in which the challenged provision is located. *See White Coat Waste Project*, 35 F.4th at 204 (in considering a facial challenge, the analysis "must focus on [the] particular challenged prohibition"). The First Amendment is concerned not with whether Maryland has authority to enact taxes, but with whether it can prohibit the conveying of truthful information about such taxes to consumers as line-items on invoices and bills.

Any other approach would invite lawmakers to sidestep the First Amendment by embedding speech restrictions within broad statutes governing unrelated conduct. And it would not comport with governing precedent. The Supreme Court has repeatedly considered the constitutionality of speech

restrictions at the level of the restriction. *See, e.g.*, *American Association of Political Consultants*, 591 U.S. at 636 (facially invalidating and severing the government-debt exception "from the remainder of the statute"). Indeed, in *Moody* itself, the Court made clear that a separate comparative analysis should be conducted provision-by-provision. *See Moody*, 144 S. Ct. at 2398. The district court thus erred in looking to the potentially legitimate sweep of the entire tax statute as opposed to the pass-through provision.

It equally would not advance the State's position to argue that the pass-through provision is "subsidiary to, intertwined with, and entirely contingent upon" the tax statute in which it appears. *Chamber of Commerce*, 90 F.4th at 687. The Court already rejected that argument, holding that the pass-through provision is analytically distinct from the tax itself, in the prior appeal. It was on that basis that the Court held that the First Amendment challenge is not barred by the Tax Injunction Act. *Id.* And again, any other result would allow legislatures to tack speech bans onto exercises of other powers, stifling First Amendment protections. That is not the law.

**b.** The district court's second error was in misidentifying the denominator for the comparative analysis. The analysis described in *Moody* asks whether the numerator (the number of the law's unconstitutional applications) is substantial in relation to the denominator (the total number of the law's applications, including its legitimate sweep). *See Moody*, 144 S. Ct. at

2397 (explaining that "even a law with 'a plainly legitimate sweep' may be struck down in its entirety . . . if the law's unconstitutional applications substantially outweigh its constitutional ones"). The district court, however, compared the provision's unlawful applications to circumstances in which the provision does not apply at all.

For instance, the court observed that the pass-through provision "does not prohibit a taxpayer from expressing its views or opinions" in ways other than separately stated fees, surcharges, or line-items. JA86. The provision does not prevent a taxpayer, for example, from observing generally that "an invoice or bill is for a higher amount" than it otherwise would be without the tax, without stating by how much in a line-item. *Id.* Nor does it prohibit taxpayers from raising their prices "indirectly" by simply remaining silent about the tax altogether. *Id.* And finally, the pass-through provision doesn't prevent taxpayers from simply declining to raise prices to recoup the tax, which would obviate the need for separately stated fees, surcharges, or line-items in the first place. *Id.* Weighed against these supposedly legitimate "applications" of the pass-through provision, the district court concluded that Appellants had not shown that "a substantial number of the applications of the Pass-Through Prohibition are unconstitutional." JA86-JA87.

That is not the analysis that *Moody* or any other cases call for. In First Amendment challenges to laws with legitimate sweeps, the Supreme Court

has tasked lower courts with considering a challenged law's "full range of *applications*—the constitutionally impermissible and permissible both—and compar[ing] the two sets." *Moody*, 144 S. Ct. at 2398 (emphasis added). The set of circumstances in which the pass-through provision *does not apply* simply cannot factor into that analysis.

Even assuming a comparative analysis were needed here (it is not) the district court should have looked to circumstances in which the pass-through provision actually applies—that is, the circumstances in which taxpayers are being prevented from disclosing the fact and amount of the tax as a separate fee, surcharge, or line item. Of those applications, the district court then should have asked, how many are constitutionally legitimate? Of course, the answer in this case is *none*, making the comparative question unnecessary.

In looking to non-applications of the pass-through provision, the district court in actuality assumed that if alternative means of expression not forbidden by Section 7.5-102(c) substantially outweigh the forbidden means of expression, it would not offend the Constitution. But that is clearly wrong. The Supreme Court has "consistently rejected the suggestion that a government may justify a content-based prohibition by showing that speakers have alternative means of expression" available to them. *Consolidated Edison*, 447 U.S. at 541 n.10 (collecting cases). Whether the pass-through provision bars Appellants from expressing their message by other means is thus immaterial to

the constitutional inquiry. Maryland is not free to censor what taxpayers may say "in the forum most likely to capture voters' attention" (*BellSouth*, 542 F.3d at 505) or to dictate how they are permitted to say it.

* * *

This case is not complicated. Maryland has forbidden the payers of a tax from identifying the tax on customer communications using a separate fee, line-item, or surcharge—a straightforward content-based speech ban. The state adopted this ban without a substantial justification. Its only explanation was that it wanted to ensure taxpayers, and not downstream consumers, would bear the brunt of the tax. But that is not a legitimate government purpose, let alone a substantial or compelling one. And the pass-through provision is wholly ineffectual at achieving it, given that it does nothing to prevent taxpayers from raising prices to recoup the cost of the tax.

That should have been the end of the matter. "Where a government restricts the speech of a private person, the state action may be sustained only if the government can show that the regulation is a precisely drawn means of serving a compelling state interest." *Consolidated Edison*, 447 U.S. at 540. Because the State failed to make that showing, the pass-through provision should have been struck as a violation of the First Amendment, on its face.

The district court's different idea—that it should evaluate the provision's constitutionality by comparing its speech-squelching applications with

cases in which it does not apply at all—was an error as plain as they come. The Court therefore should reverse the district court with instructions to enter judgment for Appellants on their First Amendment claim.

## CONCLUSION

The Court should reverse the district court and remand with instructions to enter judgment for Appellants on Count IV of the amended complaint.

October 31, 2024

Respectfully submitted,

/s/ *Michael B. Kimberly*

TARA S. MORRISSEY
JENNIFER B. DICKEY
   *U.S. Chamber Litigation Center*
   *1615 H Street NW*
   *Washington, DC 20062*
   *(202) 463-5337*

*Counsel for the Chamber of Commerce of the United States of America*

MICHAEL B. KIMBERLY
CHARLES SEIDELL
   *McDermott Will & Emery LLP*
   *500 N. Capitol Street NW*
   *Washington, DC 20001*
   *(202) 756-8000*

*Counsel for all Appellants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel for Appellants certifies that this brief:

(i)    complies with the type-volume limitation of Rule [applicable Rule] because it contains 9,106 words, including footnotes and excluding the parts of the brief exempted by Rule 32(f); and

(ii)    complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it is typeset in Century Supra font in 14 points.

Dated: October 31, 2024                    /s/ *Michael B. Kimberly*

## CERTIFICATE OF SERVICE

I hereby certify that this brief has been filed electronically with the clerk of the Court and that digital versions of the same were thus served electronically via the Court's CM/ECF system upon all counsel of record.

Dated: October 31, 2024                    /s/ *Michael B. Kimberly*