No. 24-1727
————————————

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**
————————————

**CHAMBER OF COMMERCE OF THE
UNITED STATES OF AMERICA,** *et al.*,

*Plaintiffs-Appellants*,

**v.**

**BROOKE E. LIERMAN,**

*Defendant-Appellee.*
————————————

On Appeal from the United States District Court for the District of Maryland
(Lydia Kay Griggsby, District Judge)
————————————

**BRIEF OF APPELLEE**
————————————

ANTHONY G. BROWN
Attorney General of Maryland

RYAN R. DIETRICH
Assistant Attorney General
Office of the Attorney General
Office of Solicitor General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
rdietrich@oag.state.md.us
(410) 576-7648
(410) 576-6955 (facsimile)

January 24, 2025                    Attorneys for Appellee

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. 24-1727        Caption: Chamber of Commerce of the United States v. Brooke Lierman

Pursuant to FRAP 26.1 and Local Rule 26.1,

Brooke Lierman
(name of party/amicus)

_____

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:




3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.     Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/Ryan R. Dietrich            Date:   8/27/2024

Counsel for: Appellee

Print to PDF for Filing

# TABLE OF CONTENTS

Page

ISSUE PRESENTED FOR REVIEW .......................................................1

STATEMENT OF THE CASE .................................................................2

    Statutory Background ........................................................................2

        Maryland's Digital Advertising Gross Revenues Tax
           Generally ..........................................................................2

        The Act's Pass-Through Provision .......................................3

    Procedural Background ......................................................................5

SUMMARY OF ARGUMENT.................................................................9

ARGUMENT .........................................................................................10

I.     THE STANDARD OF REVIEW IS DE NOVO. ........................................10

II.    BECAUSE THE PASS-THROUGH PROVISION REGULATES SPEECH
      ONLY TO THE EXTENT THAT IT IS INTEGRAL TO CONDUCT THAT IS
      PROHIBITED BY THE MARYLAND'S DIGITAL ADVERTISING GROSS
      REVENUES TAX ACT, THE PROVISION DOES NOT IMPLICATE THE
      FIRST AMENDMENT'S PROTECTIONS.................................................11

      A.    Speech Integral to Unlawful Conduct Is Not Protected by the
           First Amendment. ...............................................................11

      B.    The Act Regulates Speech Only to the Extent That It is
           Integral to the Unlawful Conduct of Directly Passing on the
           Digital Ad Tax to Consumers...............................................13

      C.    The Cases Cited by Plaintiffs Are Inapposite Because the
           Laws Addressed There Differed Materially from the
           Maryland Act.......................................................................17

III. EVEN IF THE PASS-THROUGH PROVISION WERE INTERPRETED TO REGULATE PROTECTED SPEECH, PLAINTIFFS CANNOT MEET THE STANDARD FOR A FACIAL CHALLENGE BECAUSE THEY CANNOT SHOW THAT A SUBSTANTIAL NUMBER OF THE ACT'S APPLICATIONS ARE UNCONSTITUTIONAL WHEN JUDGED IN RELATION TO THE ACT'S PLAINLY LEGITIMATE SWEEP. .......................................................23

CONCLUSION ........................................................................................26

REQUEST FOR ORAL ARGUMENT ...................................................27

CERTIFICATE OF COMPLIANCE .......................................................27

TEXT OF PERTINENT PROVISIONS ..................................................28

# TABLE OF AUTHORITIES

Page

## Cases

*AT&T Corp. v. Randolph*, No. 06-16, 2007 WL 647564 (E.D. Ky. Feb. 27, 2007) ...................................................................18

*BellSouth Telecomms., Inc. v. Ferris*, 542 F.3d 499 (6th Cir. 2008) ........................................................................ 10, 14, 15, 17, 18

*Bloom v. O'Brien*, 841 F. Supp. 277 (D. Minn. 1993) ............................... 19, 20, 21

*Brown v. Hartlage*, 456 U.S. 45 (1982) ...................................................13

*Central Hudson Gas & Electric Corp. v. Public Service Comm'n*, 447 U.S. 557 (1980)...........................................................20

*Chamber of Commerce v. Franchot*, 595 F. Supp. 3d 423 (D. Md. 2022)...............6

*Chamber of Commerce v. Franchot*, No. 21-cv-410-LKG, 2022 WL 17404768 (D. Md. Dec. 2, 2022)..................................................6

*Chamber of Commerce v. Lierman*, 90 F.4th 679 (4th Cir. 2024) .................. 2, 6, 7

*Comcast of Cal., et al. v. Comptroller of Md.*, No. C-02-CV-21-000509 (Cir. Ct. Anne Arundel County Oct. 20, 2022) .............................................6, 7

*Expressions Hair Design v. Scheiderman*, 581 U.S. 37 (2017)........................ 21, 23

*Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490 (1949) ........................... 11, 12

*Moody v. NetChoice, LLC*, 603 U.S. 707 (2024).....................................................24

*Nelson v. Appleway Chevrolet, Inc.*, 157 P.3d 847 (Wash. 2007)................... 20, 21

*Recht v. Morrisey*, 32 F.4th 398 (4th Cir. 2022)............................................. 16, 20

*Rice v. Paladin Enters., Inc.*, 128 F.3d 233 (4th Cir. 1997) ....................................13

*Rumseld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47 (2006) .......13

*Shook v. NCG Acquisition, LLC*, 114 F.4th 242 (4th Cir. 2024) .............................10

*United States v. Alvarez*, 567 U.S. 709 (2012) .................................... 11, 12

*United States v. Hansen*, 599 U.S. 762 (2023) ........................... 11, 12, 25

*United States v. Miselis*, 972 F.3d 518 (4th Cir. 2020) ......................8, 24

*United States v. Stevens*, 559 U.S. 460 (2010) .................................11

*United States v. Williams*, 553 U.S. 285 (2008) .................................12

## Constitutional Provisions

U.S. Const. amend I ...................................... 1, 5-7, 9, 13-14, 17-19, 21-25

## Statutes

2021 Md. Laws ch. 37..................................................................2

2021 Md. Laws ch. 669, § 6.........................................................3

28 U.S.C. § 1341 .......................................................................5

Md. Code Ann., Educ. § 1-301(a) (LexisNexis 2022)...................3

Md. Code Ann., Tax-Gen. § 2-4A-01 (LexisNexis 2022).............3

Md. Code Ann., Tax-Gen. § 2-4A-02 (LexisNexis 2022).............3

Md. Code Ann., Tax-Gen. § 7.5-101(c) (LexisNeis 2022).......................2

Md. Code Ann., Tax-Gen. § 7.5-101(d) (LexisNexis 2022) .......................2

Md. Code Ann., Tax-Gen. § 7.5-102 (LexisNexis 2022) ........................ 2, 3, 5, 16

Md. Code Ann., Tax-Gen. § 7.5-102(b)(1) (LexisNexis 2022)...............................3

Md. Code Ann., Tax-Gen. § 7.5-102(c) (LexisNexis 2022) .............. 4, 5, 15, 16, 20

Md. Code Ann., Tax-Gen. § 7.5-103 (LexisNexis 2022) ..........................................2

## Rules

Fed. R. Civ. P. 12(b)(6).................................................................10

**Miscellaneous**

Veto Message from the Governor of Maryland for House Bill 732, available at
https://mgaleg.maryland.gov/2020RS/veto_letters/hb0732.pdf...........................3

Written Testimony of Senate President Bill Ferguson in Support of S.B. 787, 2021
Reg. Sess. Before the House Ways & Means Comm. 1 (Mar 25, 2021) .............4

No. 24-1727

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

_____

## CHAMBER OF COMMERCE OF THE
## UNITED STATES OF AMERICA, *et al.*,

*Plaintiffs-Appellants*,

v.

## BROOKE E. LIERMAN,

*Defendant-Appellee.*

_____

On Appeal from the United States District Court for the District of Maryland
(Lydia Kay Griggsby, District Judge)

_____

## BRIEF OF APPELLEE

_____

## ISSUE PRESENTED FOR REVIEW

Does the direct pass-through prohibition of Maryland's Digital Advertising Gross Revenues Tax Act fail to implicate the First Amendment where, to the extent the Act regulates speech, it prohibits only speech integral to unlawful conduct?

# STATEMENT OF THE CASE

## Statutory Background

### Maryland's Digital Advertising Gross Revenues Tax Generally

Maryland's Digital Advertising Gross Revenues Tax Act, 2021 Md. Laws ch. 37, codified at Title 7.5 of the Tax-General Article (the "Act"), imposes a tax (the "digital ad tax") on a business's annual gross revenues derived from digital advertising services in the State, if the business has at least $100 million in global annual gross revenues.  Md. Code Ann., Tax-Gen. §§ 7.5-102, 7.5-103 (LexisNexis 2022).  "'Digital advertising services' includes advertisement services on a digital interface, including advertisements in the form of banner advertising, search engine advertising, interstitial advertising, and other comparable advertising services."[1]  *Id.* § 7.5-101(d).

The Act's progressive tax rate is graduated in increments of 2.5%, from 2.5% to 10%, based on the global annual gross revenues of the business.  *Id.* § 7.5-103. The "assessable base" is the business's "annual gross revenues derived from digital advertising services in the State" of Maryland, *id.* § 7.5-101(c), and is determined using an apportionment fraction based on the annual gross revenues of the business

---

[1] In an earlier opinion, this Court gave a concrete example of the Act's application:  "[W]hen Google displays sponsored links on its search results, the Act taxes a percentage of the revenue that Google makes from those advertisements." *Chamber of Commerce v. Lierman*, 90 F.4th 679, 682 (4th Cir. 2024).

derived from digital advertising services in the State (the numerator) and in the United States (the denominator),[2] *id*. § 7.5-102(b)(1). After deducting the costs to administer the tax, *id*. § 2-4A-01, all remaining revenues are distributed to the Blueprint for Maryland's Future Fund, *id*. § 2-4A-02, for use in implementing the Blueprint for Maryland's Future, which is intended to "transform Maryland's education system to world-class student achievement levels," Md. Code Ann., Educ. § 1-301(a) (LexisNexis 2022).

The Act is "applicable to all taxable years beginning after December 31, 2021." 2021 Md. Laws ch. 669, § 6.

### The Act's Pass-Through Provision

In 2021, the Act was amended[3] to prohibit a covered taxpayer from directly passing on the cost of the digital ad tax to a purchaser of digital advertising services (the "pass-through provision"):

> A person who derives gross revenues from digital advertising services in the State may not directly pass on the cost of the tax imposed under

---

[2] The Act authorizes the Comptroller to "adopt regulations that determine the state from which revenues from digital advertising services are derived." Tax-Gen. § 7.5-102(b)(2); *see* Md. Code Regs. 03.12.01.02, 03.12.01.03.

[3] The Act was originally passed during the General Assembly's 2020 legislative session but was vetoed by the governor. *See* Veto Message from the Governor of Maryland for House Bill 732, available at https://mgaleg.maryland.gov/2020RS/veto_letters/hb0732.pdf. The governor's veto was overridden during the 2021 legislative session, and the Act was then amended as set forth above.

this section to a customer who purchases the digital advertising services by means of a separate fee, surcharge, or line-item.

Tax-Gen. § 7.5-102(c).

The legislative history sets forth the purpose of the pass-through provision. For example, in his testimony before the House Ways & Means Committee, Senate President Bill Ferguson explained that "[m]assive technology companies had ballooned in influence over the last two decades," especially regarding their "ability to monetize personal data for targeted advertising." Written Testimony of Senate President Bill Ferguson in Support of S.B. 787, 2021 Reg. Sess. Before the House Ways & Means Comm. 1 (Mar 25, 2021).[4] He explained that "[t]he growth of these companies has resulted in negative externalities socialized and borne by the public," but that "[i]n order for a more efficient and fair marketplace to exist in this new media environment, externalities created by private actors' actions must be borne by that actor." *Id*. The pass-through provision was thus intended to effectuate balance and fairness by ensuring that digital advertising services companies cannot directly "pass the cost of the Digital Ad Tax onto small business consumers," while not rendering "these [digital advertising services] companies unable to profit," but merely "mak[ing] them responsible for their own costs." *Id*.

---

[4]Available at https://mgaleg.maryland.gov/cmte_testimony/2021/wam /1essBer4Q0b7nepp-A4pXRl38vJHaws9O.pdf

During this litigation, the parties stipulated that "Tax-General § 7.5-102(c) does not prohibit a person who derives gross revenues from digital advertising services in the State from indirectly passing on the cost of the tax imposed under Tax-General § 7.5-102 by factoring such cost into its customer pricing." (JA45.) Instead, "[t]he cost of the tax is passed on directly only when it is imposed on the customer by means of a 'separate fee, surcharge, or line-item.'" (JA45.)

**Procedural Background**

This matter began in 2021 when four non-profit organizations purporting to represent the interests of various for-profit corporate taxpayers filed a four-count lawsuit in the United States District Court for the District of Maryland. (JA15-36.) The first three counts, which challenged the digital ad tax itself, asserted violations of the Commerce Clause, Due Process Clause, First Amendment, and the Internet Tax Freedom Act. (JA31-34.) Count Four challenged the pass-through provision on First Amendment grounds.[5] (JA34-35.)

The Comptroller moved to dismiss the complaint on the grounds that all plaintiffs' claims were barred by the Tax Injunction Act, 28 U.S.C. § 1341, which "prevents federal courts from enjoining the collection of state taxes when state law

---

[5] The operative complaint also challenged the pass-through provision on Commerce Clause grounds. (JA34.) Plaintiffs, however, withdrew that aspect of their claim in light of the stipulation (JA45), thus leaving the First Amendment as the sole basis for their challenge to the pass-through provision.

provides an adequate remedy." *Chamber of Commerce v. Lierman*, 90 F.4th 679, 682 (4th Cir. 2024). On March 30, 2022, the district court issued a decision dismissing the counts challenging the underlying digital ad tax. *Chamber of Commerce v. Franchot*, 595 F. Supp. 3d 423, 432-33 (D. Md. 2022). The district court, however, concluded that plaintiffs' challenge to the pass-through provision was not implicated by the Tax Injunction Act and thereby retained jurisdiction over that claim. *Id*. at 437.

Six months later, while the challenge to the pass-through provision was still pending before the district court, the Circuit Court for Anne Arundel County issued a decision declaring the digital ad tax unconstitutional.[6] *Comcast of Cal., et al. v. Comptroller of Md.*, No. C-02-CV-21-000509 (Cir. Ct. Anne Arundel County Oct. 20, 2022). In light of this state-court decision, the district court dismissed as moot plaintiffs' challenge to the pass-through provision. *Chamber of Commerce v. Franchot*, No. 21-cv-410-LKG, 2022 WL 17404768 *3 (D. Md. Dec. 2, 2022).

Plaintiffs appealed. While the case was pending before this Court, the Supreme Court of Maryland reversed the decision of the Circuit Court for Anne

---

[6] As in this case, the plaintiffs in the state case had asserted that the digital ad tax violated the Commerce Clause, First Amendment, and the Internet Tax Freedom Act. The plaintiffs in the state case, however, did not challenge the pass-through provision.

Arundel County and dismissed the matter on jurisdictional grounds.[7]  *Comptroller of Md. v. Comcast of Cal.*, 484 Md. 222 (2023).  On January 10, 2024, this Court affirmed the district court's judgment to the extent that the decision had concluded that the Tax Injunction Act precluded the district court from hearing plaintiffs' challenge to the underlying digital ad tax.  *Chamber of Commerce*, 90 F.4th at 684-87.  But in light of the Supreme Court of Maryland's decision, this Court vacated the district court's order dismissing plaintiffs' First Amendment claim.  *Id*. at 687-88.  After affirming that the Tax Injunction Act was not a barrier to the district court hearing plaintiffs' First Amendment challenge to the pass-through provision, this Court remanded the matter to the district court for further proceedings.  *Id*. at 688-89.  In doing so, this Court instructed "[t]he district court in the first instance [to] decide whether the pass-through provision restrains speech and, if so, whether it passes constitutional muster."  *Id*.  This Court noted that plaintiffs had brought a facial challenge and that "[b]ecause a facial challenge requires proving that 'no set of circumstances exists under which the Act would be valid,' those sorts of circumstances are best considered by the district court with the benefit of further fact-finding potentially."  *Id*. at 689 (citing *United States v. Miselis*, 972 F.3d 518,

---

[7]  The Supreme Court of Maryland held that the circuit court lacked jurisdiction to hear the challenges to the digital ad tax because the plaintiffs had failed to exhaust their administrative remedies as required by Maryland law. *Comcast of California*, 484 Md. at 229.

530 (4th Cir. 2020)).  This Court highlighted that "[a] facial challenge to a statute's constitutionality presents 'a high bar[],'" and charged the district court with "determin[ing] whether the Act is unconstitutional in all circumstances." *Id.*

On remand, the parties filed supplemental briefs regarding the meaning of the pass-through provision.  In those briefs, the parties expressed their continued adherence to the interpretation set forth in the stipulation.  (JA50, JA55.) Furthermore, the Comptroller clarified that, "in light of the statute's use of the term 'directly,' it is clear that the pass-through provision is implicated only when an entity expressly imposes on its customers the responsibility for the tax . . . ." (JA50.)  The Comptroller continued, "The pass-through provision therefore (1) does not affect an entity's internal-facing deliberations or accounting regarding the amount to charge for its services, (2) does not impose any restriction on the amount that an entity may in fact charge, and in turn (3) does not prohibit an entity from factoring the estimated cost of the tax into the price that it ultimately charges its customers."  (JA50.) Finally, the Comptroller reaffirmed that, "although the statute prohibits an entity from passing on the cost of the tax 'directly . . . by means of a separate fee, surcharge, or line-item,' the pass-through provision does not impose any restriction on an entity's ability to convey information about the tax (or its effect on consumer pricing) through other means."  (JA51.)

Then, on July 3, 2024, the district court issued its decision rejecting plaintiffs' First Amendment challenge. (JA68-87.) The district court first declared that the pass-through provision "regulates conduct, to the extent that the [pass-through provision] prohibits 'directly passing on the cost of the tax imposed by [the digital ad tax]." (JA80.) But, in the next sentence, the district court announced that it "reads the [pass-through provision] to regulate protected speech, to the extent that the statute prohibits directly passing [on] the cost of the tax, 'by means of a separate fee, surcharge, or line-item.'" (JA80.) Nonetheless, the district court concluded that "[p]laintiffs have not shown . . . that the [pass-through provision] lacks a 'plainly legitimate sweep,' or that a substantial number of the statute's applications are unconstitutional, judged in relation to the [pass-through provision's] plainly legitimate sweep, to prevail on their First Amendment challenge." (JA80.)

Plaintiffs then noted a timely appeal. (JA91-92.)

## SUMMARY OF ARGUMENT

The district court correctly concluded that the pass-through provision "regulates conduct," in that it prohibits "directly passing on the cost of the tax imposed by the [digital ad tax]." (JA80.) But the district court erred in concluding that the pass-through provision "regulate[s] *protected* speech." (JA80 (emphasis added).) Instead, to the extent that the pass-through provision regulates speech, it

regulates speech that is integral to the conduct that the Act prohibits and thus falls outside of the First Amendment.

As the Sixth Circuit (and the district court below, *see* JA80) recognized, prohibiting a taxpayer from "directly passing on the cost of the tax imposed by the [digital ad tax]" is a permissible regulation of *conduct* and "as a result lie[s] beyond the protection of the First Amendment." *BellSouth Telecomms., Inc. v. Ferris*, 542 F.3d 499, 510 (6th Cir. 2008). But to engage in that prohibited conduct, a taxpayer must necessarily communicate to the customer that it is doing so. The pass-through provision at issue here thus regulates the only means through which that prohibited conduct might be accomplished, i.e., through a "separate fee, surcharge, or line-item." And, in doing so, the pass-through provision does not prohibit a taxpayer from expressing its views on the tax on an invoice, or even indicating that the cost of services has increased because of the imposition of the tax. Accordingly, the pass-through provision does not violate—or even implicate—the First Amendment's protections.

## ARGUMENT

### I.   THE STANDARD OF REVIEW IS DE NOVO.

This court "review[s] de novo a district court's decision to grant a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Shook v. NCG Acquisition, LLC*, 114 F.4th 242, 248 (4th Cir. 2024).

II.    **BECAUSE THE PASS-THROUGH PROVISION REGULATES SPEECH ONLY TO THE EXTENT THAT IT IS INTEGRAL TO CONDUCT THAT IS PROHIBITED BY THE MARYLAND'S DIGITAL ADVERTISING GROSS REVENUES TAX ACT, THE PROVISION DOES NOT IMPLICATE THE FIRST AMENDMENT'S PROTECTIONS.**

Plaintiffs argue that the pass-through provision violates the First Amendment because, in their view, it is a content-based speech restriction that fails any level of scrutiny.  Appellants' Br. 14-30.  But, as explained below, to the extent that the pass-through provision is interpreted to regulate speech, it does so only to the extent that the covered speech is integral to the conduct, prohibited by the Act, of "directly pass[ing] on the cost of [the digital ad tax]."  Accordingly, because such speech is "unprotected" by the First Amendment, *United States v. Hansen*, 599 U.S. 762, 783 (2023), plaintiffs' First Amendment claim has no merit.

### A.    Speech Integral to Unlawful Conduct Is Not Protected by the First Amendment.

Not all content-based restrictions on speech are prohibited by the First Amendment.  Instead, such restrictions "have been permitted, as a general matter, only when confined to the few historic and traditional categories [of expression] long familiar to the bar."  *United States v. Alvarez*, 567 U.S. 709, 717 (2012) (citing *United States v. Stevens*, 559 U.S. 460, 470 (2010)).  Among these categories expressly recognized by the Supreme Court is "speech integral to criminal conduct." *Id*. (citing *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490 (1949)).

11

The carve-out for speech integral to unlawful conduct is a necessary function of the practical role that words play in furthering certain actions. To that end, "[i]t has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *Hansen*, 599 U.S. at 783 (quoting *Giboney*, 336 U.S. at 502). That is because "[s]peech intended to bring about a particular unlawful act has no social value." *Id.* "[T]herefore, it is unprotected." *Id.*

Courts have "applied this principle many times." *Id.* For example, in *Hansen*, the Supreme Court concluded that a statute prohibiting an individual from knowingly "induc[ing] an alien" to enter the United States illegally had a "wide legitimate reach," outside of the First Amendment's scope, "insofar as it applies to . . . speech soliciting or facilitating criminal violations of immigration law." *Id.* at 784. Similarly, in *United States v. Williams*, 553 U.S. 285, 297 (2008), the Supreme Court upheld the unremarkable proposition that the government could prohibit offers to provide (or requests to obtain) child pornography, even though such offers (or requests) would necessarily have to be communicated in some fashion. And in *Alvarez*, 567 U.S. at 721, the Court explained that laws falsely implying governmental approval—such as by "using words such as 'Federal' or 'United States' in the collection of private debts in order to convey that the communication

12

has official authorization"—did not run afoul of the First Amendment even though those laws, by their very terms, could be violated only by displaying or uttering certain words.  Other examples abound.  *See, e.g.*, *Rumseld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 62 (2006) (noting that the fact that Congress can prohibit race discrimination in employment "require[s] an employer to take down a sign reading 'White Applicants Only' hardly means that the law should be analyzed as one regulating the employer's speech rather than conduct"); *Brown v. Hartlage*, 456 U.S. 45, 54-55 (1982) ("And as a State may prohibit the giving of money or other things of value to a voter in exchange for his support, it may also declare unlawful an agreement embodying the intention to make such an exchange."); *Rice v. Paladin Enters., Inc.*, 128 F.3d 233, 244 (4th Cir. 1997) (compiling cases).

As explained below, because the pass-through provision falls squarely within the category of speech integral to unlawful conduct, plaintiffs' claim that the provision violates the First Amendment should be rejected.

B.     **The Act Regulates Speech Only to the Extent That It is Integral to the Unlawful Conduct of Directly Passing on the Digital Ad Tax to Consumers.**

To understand why the pass-through provision regulates only speech integral to unlawful conduct, it is necessary to examine the scope of the provision, including

the conduct it prohibits (and does not prohibit) and how that prohibited conduct is accomplished.

As the pass-through provision makes clear, the prohibited conduct occurs when a taxpayer "directly pass[es] on the cost of [the digital ad tax]" to a consumer. In legal parlance, the pass-through provision thus regulates the "legal incidence" of the tax; that is, which party to the transaction will be responsible for paying the tax. As the Sixth Circuit (and the district court below, *see* JA80) recognized, prohibiting a taxpayer from "collect[ing] the tax directly from the purchaser" is a permissible regulation of *conduct* and "as a result lie[s] beyond the protection of the First Amendment." *BellSouth*, 542 F.3d at 510; *see id.* at 500 ("[N]o one disputes . . . Kentucky's authority to prevent providers from switching the legal incidence of taxation to their customers."). Accordingly, the pass-through provision prohibits the taxpayer from structuring the transaction so that the consumer is responsible for the tax. In practical terms, the taxpayer cannot charge a consumer a particular price for services, and then, independent of the price of services, make the consumer responsible for the payment of the tax.

But if, as courts agree (and plaintiffs have not disputed), prohibiting the direct collection of taxes is conduct, the question then becomes how that conduct may be accomplished. The answer is simple: through words, typically expressed on a document seeking payment from the consumer, i.e., an invoice. Stated differently,

14

by placing the responsibility for the tax on the customer through a "separate fee, surcharge, or line-item," the taxpayer has—through the use of those words and figures—engaged in the conduct of directly passing on the cost of the tax. Indeed, it is unclear how a taxpayer could communicate that it is directly passing on the tax (i.e., structuring the transaction so that the consumer is responsible for the tax) without communicating that it is doing so. *See BellSouth*, 542 F.3d at 510 (observing that "one way[8] a provider could collect the tax directly from a customer is through a separate statement on the bill").

This is illustrated by the fact that, if the taxpayer were to pass on the tax but *not* communicate that fact to the consumer in some fashion, the taxpayer's conduct would fall outside the scope of the pass-through provision. That is because such conduct would not fall within the prohibition on "*directly* pass[ing] on the cost of the tax." Tax-General § 7.5-102(c) (emphasis added). The parties recognized this when they stipulated that "Tax-General § 7.5-102(c) does not prohibit a person who

---

[8] To the extent the Sixth Circuit identified any other way to "directly collect the tax," it was in the context of the Kentucky statute at issue, which (unlike here) also prohibited "separately stat[ing] the tax on the bill." The Sixth Circuit thus noted that a taxpayer "could directly collect the tax without separately stating it [on the bill]" by engaging in "direct, in-person communication." 542 F.3d at 510-11. But, unlike the Kentucky law, the Maryland law at issue here is not limited to a "bill," and thus would prohibit "direct, in-person communication" to the extent that it communicates the digital ad tax as a "fee" or "surcharge" "separate" from the cost of services. Notably, the Sixth Circuit did not identify any additional ways in which a taxpayer could "directly collect" a tax from a consumer.

derives gross revenues from digital advertising services in the State from *indirectly* passing on the cost of the tax imposed under Tax-General § 7.5-102 *by factoring such cost into its customer pricing*." (JA45 (emphasis added).)

Additionally, it is unclear how a taxpayer could communicate that it is directly passing on the tax by means *other* than those set forth in the pass-through provision, i.e., through a "fee, surcharge, or line-item" that is "separate" from the cost of the underlying services. As the district court explained, these terms all have well-established definitions. A "fee" is a "charge or payment for labor or services," a "surcharge" is an "additional tax, charge or cost," and a "line-item" is "a single entry or notation to which a particular dollar amount is attached," typically on "a financial statement." (JA81 (citations omitted).) Yet there is no way to "directly pass on" a tax without having communicated the tax as a "charge" or as a "notation to which a particular dollar amount is attached."[9] Accordingly, because a taxpayer's communicative act of directly passing on the tax is integral to the unlawful conduct

_____

[9] The pass-through provision's inclusion of the "by means of a separate fee, surcharge, or line-item" language was intended to inform the public (and taxpayers) as to what conduct constitutes "directly pass[ing] on the cost of the tax." Tax-Gen. § 7.5-102(c). This specification of prohibited conduct does not, as the district court concluded (JA80), convert the statute into a restriction of speech. Rather, it serves to supply the sort of "minimal guidelines" and "reasonable notice of the proscribed conduct" that prevent a statute from being deemed unconstitutionally vague. *Recht v. Morrisey*, 32 F.4th 398, 415 (4th Cir. 2022) (citation omitted).

of directly passing on the tax, that communicative act, though technically "speech," falls outside of the protections of the First Amendment.

### C. The Cases Cited by Plaintiffs Are Inapposite Because the Laws Addressed There Differed Materially from the Maryland Act.

In support of their argument, plaintiffs point to cases in which "[c]ourts have repeatedly invalidated similar measures prohibiting companies from stating taxes and fees imposed by the government as line-items on bills to customers." Appellants' Br. 29. But a closer examination demonstrates that the laws at issue in those cases are materially different from Maryland's pass-through provision, and those cases thus provide a clear contrast for why Maryland's law does not suffer from those same infirmities.

*BellSouth* involved a Kentucky gross revenues tax on telecommunications providers. In conjunction with that tax, Kentucky enacted a law stating that a "provider shall not collect the tax directly from the purchaser or separately state the tax on the bill to the purchaser." 542 F.3d at 501. Although, as discussed above, the Sixth Circuit concluded that the prohibition on "collect[ing] the tax directly" was a prohibition on *conduct* and thus did not implicate the First Amendment, the court nonetheless concluded that the prohibition on "separately stat[ing] the tax on the bill" was an impermissible content-based restriction on protected speech. *Id*. at 506. The Sixth Circuit had no difficulty invalidating such a broad-brush ban on expressive

speech that, in the court's view, did little else than "facilitate[] keeping consumers (and voters) in the dark about the tax and its impact on their wallets."[10] *Id*. at 505.

Maryland's pass-through provision, however, contains no such "no-stating-the-tax" provision. Whereas the Kentucky law at issue in *BellSouth* prohibited *any* mention of the tax "in the forum most likely to capture voters' attention," *id*., Maryland's law prohibits a taxpayer from referencing the tax only as a "fee, surcharge, or line-item" that is "separate" from the cost of services (whether on the bill or otherwise). As discussed above, although this prohibition does restrict speech in a technical sense, it restricts only that speech that is integral to the unlawful conduct of "directly pass[ing] on" the digital ad tax to a consumer. In contrast to the Kentucky law, so long as the taxpayer does not identify the cost of the digital ad tax as an amount for which the consumer will be responsible that is "separate" from the cost of services, the taxpayer may say whatever they want about the tax. They may include a narrative statement on the invoice criticizing the tax. And, if the taxpayer has opted to pass on the cost of the tax "indirectly" (i.e., "by factoring such cost into its customer pricing" (JA45)), a taxpayer may even state the amount by which they

---

[10] In their brief, plaintiffs cite to a district court case that also invalidated the Kentucky law at issue in *BellSouth* on First Amendment grounds. Appellants' Br. 29 (citing *AT&T Corp. v. Randolph*, No. 06-16, 2007 WL 647564 (E.D. Ky. Feb. 27, 2007)). But *Randolph* was decided before *BellSouth*, and therefore any substantive discussion of *Randolph* would be redundant here.

have raised the cost of their services and assign the reason for that increase expressly to the imposition of the digital ad tax. By restricting only that speech that is integral to unlawful conduct (and leaving all other channels of expression unregulated), Maryland's pass-through provision—unlike Kentucky's law—does not restrict any protected speech.[11]

Plaintiffs also rely heavily on *Bloom v. O'Brien*, 841 F. Supp. 277 (D. Minn. 1993). Appellants' Br. 28-29. There, the district court struck down on First Amendment grounds a Minnesota law that prohibited a health care provider from itemizing the cost of a gross revenue tax on invoices. Although this at first may sound similar to Maryland's pass-through provision, the Minnesota law had one crucial difference. Unlike Maryland's pass-through provision, which precludes a taxpayer from "directly pass[ing] on the tax," the Minnesota statute contained no such prohibition: "There is no question that passing on to consumers the economic burden of the gross revenue tax is lawful. The statute specifically allows that[.]" *Id.* at 281; *see also id.* ("Itemizing the specific dollar amount of the gross revenue tax

_____

[11] Plaintiffs thus appear to proceed from a false premise. They lament that "[o]ne of the most effective ways to communicate [that the government enacted a tax] is to include an express tax-recovery fee, surcharge, or line-item on each customer's bill that clearly communicates that prices are going up because of state tax policy, and by how much," but that "Maryland law forbids this." Appellants' Br. 1. Plaintiffs are mistaken. Plaintiffs may include any of these things on the invoice (or elsewhere), so long as they do not express any such "fee, surcharge, or line-item" as imposing an amount "separate" from the price of services.

being passed along to a patient would simply inform consumers that, in addition to charges for the medical service provided, [consumers] were also paying a share of the tax imposed on the health care provider.").  In other words, unlike Maryland's law, whose incidental restriction on speech was necessary to implement a prohibition on unlawful conduct, Minnesota's restriction on speech had no similar underpinning. And without that, Minnesota's law was a straightforward restriction on speech-as-speech that therefore fell squarely within the heartland of the First Amendment. *Bloom* thus provides no support for plaintiffs' position here.[12]

The Supreme Court of Washington found *Bloom* to be inapplicable on this basis in *Nelson v. Appleway Chevrolet, Inc.*, 157 P.3d 847 (Wash. 2007).  There, Washington had enacted a business and occupation ("B&O") tax but mandated that

---

[12] In *Bloom*, having ruled that the law regulated protected speech, the court concluded that the speech at issue was commercial speech and invalidated the statute under the framework set forth in *Central Hudson Gas & Electric Corp. v. Public Service Comm'n*, 447 U.S. 557 (1980).  Here, even if Maryland's law is evaluated under the commercial speech framework, it would survive scrutiny.  That is because the threshold inquiry under *Central Hudson* is whether the speech at issue "concern[s] lawful activity."  *Id.* at 566.  But unlike in *Bloom* where the statute both expressly authorized pass-through and expressly compelled the customer to pay the tax passed through, Maryland's law prohibits "directly pass[ing] on" the digital ad tax, Tax-Gen. § 7.5-102(c), and thereby makes that activity unlawful.  Where, as in this case, that threshold requirement of lawfulness is not met, *Central Hudson* does not call for application of the rest of its analysis, and a court should "proceed no further." *Recht v. Morrisey*, 32 F.4th 398, 412 (4th Cir. 2022); *see Central Hudson*, 447 U.S. at 564 (conditioning analysis under its additional factors on a showing that "the communication is neither misleading nor related to unlawful activity").

20

such taxes were to be collected only from "the person engaging in the business activities herein designated and that such taxes shall constitute a part of the operating overhead of such persons." *Id*. at 850. Nonetheless, after negotiating a final price with a customer for a car, a dealership added $79 in B&O tax to the invoice as a separate charge. *Id*. The customer sued, and the dealership claimed that the law was an impermissible restriction on disclosure in violation of the First Amendment. But the court rejected that claim, noting that the dealership was free to disclose and itemize any tax or cost so long it was not separate from the "final purchase price" of the car. *Id*. at 852. In doing so, the court distinguished *Bloom*, because the law at issue there had "specifically allowed health care tax to be passed through to patients but forbade doctors from informing patients about the tax." *Id*. at 852-53 (citing *Bloom*, 841 F. Supp. at 279). Underscoring that distinction, the court declared, "The First Amendment . . . will not insulate [the dealership's] illegal practice of making customers bear [its] tax burden." *Nelson*, 157 P.3d at 852.

Finally, the Supreme Court's decision in *Expressions Hair Design v. Scheiderman*, 581 U.S. 37 (2017), a case cited by both plaintiffs and the district court, does not control the outcome in this case. In *Scheiderman*, the Court addressed a First Amendment challenge to a New York law that banned merchants from "impos[ing] a surcharge" on customers who elected to make a purchase using a credit card. The law, however, did not prohibit a merchant from displaying one

21

price and then offering a discount for paying by cash. In analyzing the law, the Supreme Court rejected the premise, which had been adopted by the Second Circuit, that the law merely regulated the relationship between two prices (i.e., the credit card price and the cash price) and "was therefore simply a conduct regulation." *Id*. at 46-47. Instead, the Court noted that the New York law was "not like a typical price regulation" that "would simply regulate the amount that a store could collect." *Id*. at 47. Rather, because the law regulated "how sellers may communicate their prices," the Court concluded that the law regulated speech.[13] *Id*. at 47-48.

Here, however, Maryland's pass-through provision *does* regulate what a taxpayer "could collect" from a consumer, thus underscoring its status as a regulation of speech integral to conduct. To be able to collect any fee for the purchase of digital advertising services, a taxpayer must necessarily invoice to the consumer an amount to be paid for those services. Although the pass-through provision does not impact the amount a taxpayer may charge for its *services*, the provision does "determin[e] the amount [of the digital ad tax] charged" to the consumer by, in effect, *limiting that amount to zero*. In other words, a taxpayer may charge whatever price it wants for its services, but it may not "directly pass on" the

---

[13] The Supreme Court remanded the case to the Second Circuit to determine whether the New York law survived scrutiny under a First Amendment analysis.

digital ad tax by imposing the cost of the digital ad tax through means "separate" from the price charged for its services.[14]

The upshot of these cases is that, as a general matter, the government cannot prohibit a taxpayer from referencing or otherwise "stating" the tax on an invoice (or elsewhere) to its customer. But that says nothing about what Maryland's pass-through provision does here, which is to prohibit speech only to the extent necessary to regulate the unlawful conduct of placing the legal incidence on the consumer by referencing the tax in a manner that establishes the consumer's responsibility to pay that tax.

III. **EVEN IF THE PASS-THROUGH PROVISION WERE INTERPRETED TO REGULATE PROTECTED SPEECH, PLAINTIFFS CANNOT MEET THE STANDARD FOR A FACIAL CHALLENGE BECAUSE THEY CANNOT SHOW THAT A SUBSTANTIAL NUMBER OF THE ACT'S APPLICATIONS ARE UNCONSTITUTIONAL WHEN JUDGED IN RELATION TO THE ACT'S PLAINLY LEGITIMATE SWEEP.**

As set forth above, the pass-through provision does not implicate the First Amendment because it regulates speech only to the extent that the speech is integral

_____

[14] Invoking *Expressions Hair Design*, the district court in this case concluded that the pass-through provision impermissibly "restricts speech, because [it] places restrictions on how a taxpayer can communicate to its customers about the tax." (JA83.) But given the district court's earlier conclusion that the pass-through provision's "prohibition of directly passing on the cost of the [digital ad] tax [permissibly] regulates *non-expressive conduct*," (JA83 (emphasis added)), it is unclear how that the General Assembly could, as a practical matter, regulate that "non-expressive conduct" without also prohibiting the means through which that conduct is effectuated (i.e., through a "separate fee, surcharge, or line-item").

to unlawful conduct. But even if the pass-through provision is interpreted to prohibit some protected speech, the district court's decision should nonetheless be affirmed because the pass-through provision has a plainly legitimate sweep that dwarfs any unconstitutional applications.

Plaintiffs in this case bring a facial challenge to the pass-through provision. "Such claims of facial invalidity 'are disfavored for several reasons.'" *United States v. Miselis*, 972 F.3d 518, 530 (4th Cir. 2020) (citations omitted). "Claims of facial invalidity often rest on speculation about the law's coverage and its future enforcement." *Moody v. NetChoice, LLC*, 603 U.S. 707, 723 (2024) (citations and quotation marks omitted). "And facial challenges threaten to short circuit the democratic process by preventing duly enacted laws from being implemented in constitutional ways." *Id*. The Supreme Court "has therefore made facial challenges hard to win." *Id*.

Ordinarily, "a plaintiff cannot succeed on a facial challenge unless he establish[es] that no set of circumstances exists under which the [law] would be valid, or he shows that the law lacks a plainly legitimate sweep." *Id*. But the Court "has lowered that high bar" in the First Amendment arena, though the standard is "still rigorous." *Id*. "The question is whether a substantial number of [the law's] applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id*.

While "[t]he first step in the proper facial analysis is to assess the state laws' scope," *id*. at 724, "[t]he next order of business is to decide which of the laws' applications violate the First Amendment, and to measure them against the rest," *id*. at 725. In other words, to decide a facial challenge, courts "must explore the laws' full range of applications—the constitutionally impermissible and permissible both—and compare the two sets." *Id*. at 726. "In the absence of a lopsided ratio, courts must handle unconstitutional applications as they usually do—case-by-case." *Hansen*, 599 U.S. at 770.

Here, as explained above, although the pass-through provision does regulate speech, it does so only to the extent that the speech is integral to the prohibited conduct of "directly pass[ing] on" the digital ad tax to consumers. The sample invoices included by plaintiffs in their brief are clear-cut examples of the pass-through provision's constitutional application. The first, which separates out "advertising services" from a digital ad tax "recoupment fee," plainly has the effect of furthering the unlawful conduct of directly imposing the tax on a consumer through means "separate" from the cost of the services themselves. Appellants' Br. 18. And although the second example is somewhat more circumspect, by explaining that the "[t]otal due" includes a "10% surcharge" for the digital ad tax, the invoice is nonetheless structured so that the "surcharge" is an amount "separate" from the underlying cost of services. Appellants' Br. 18.

What is left is that plaintiffs have failed to demonstrate any unconstitutional applications of the pass-through provision for this Court to weigh against the provision's plainly legitimate sweep. Accordingly, the judgment of the district court should be affirmed.

## CONCLUSION

The judgment of the United States District Court for the District of Maryland should be affirmed.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General of Maryland

/s/ Ryan R. Dietrich
_____

RYAN R. DIETRICH
Assistant Attorney General
Office of the Attorney General
Office of Solicitor General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
rdietrich@oag.state.md.us
(410) 576-7648
(410) 576-6955 (facsimile)

Attorneys for Appellee

## REQUEST FOR ORAL ARGUMENT

The Appellee respectfully requests that the Court hear oral argument in this appeal, as it involves a constitutional challenge to a statute of a sovereign State.

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 5,147 words, excluding the parts of the brief exempted by Rule 32(f).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Rule 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Fourteen point, Times New Roman.

/s/ Ryan R. Dietrich

_____

Ryan R. Dietrich

# TEXT OF PERTINENT PROVISIONS

Md. Code Ann., Tax-General §7.5–102.

(a) A tax is imposed on annual gross revenues of a person derived from digital advertising services in the State.

(b)  (1)  For purposes of this title, the part of the annual gross revenues of a person derived from digital advertising services in the State shall be determined using an apportionment fraction:

>  (i)  the numerator of which is the annual gross revenues of a person derived from digital advertising services in the State; and

>  (ii)  the denominator of which is the annual gross revenues of a person derived from digital advertising services in the United States.

(2)  The Comptroller shall adopt regulations that determine the state from which revenues from digital advertising services are derived.

(c)  A person who derives gross revenues from digital advertising services in the State may not directly pass on the cost of the tax imposed under this section to a customer who purchases the digital advertising services by means of a separate fee, surcharge, or line–item.

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

|  |  |  |
|---|---|---|
| | * | |
| CHAMBER OF COMMERCE OF | | |
| THE UNITED STATES OF | * | |
| AMERICA, *et al.*, | | |
| | * | No. 24-1727 |
| *Plaintiffs-Appellants*, | | |
| v. | * | |
| | | |
| BROOKE E. LIERMAN, | * | |
| | | |
| *Defendant-Appellee*. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**CERTIFICATE OF SERVICE**

I certify that, on this 24th day of January, 2025, the Brief of Appellee was filed electronically and served on counsel of record who are registered CM/ECF users.

/s/ Ryan R. Dietrich
_____
Ryan R. Dietrich