# In the United States Court of Appeals for the Fourth Circuit

———————

CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA, NETCHOICE, AND COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION,

*Plaintiffs-Appellants,*

*v.*

BROOKE E. LIERMAN,

*Defendant-Appellee,*

———————

On Appeal from the United States District Court
for the District of Maryland
Case No. 21-cv-410, Hon. Lydia Kay Griggsby

———————

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS

———————

<table>
<tr><td>

Tara S. Morrissey
Jennifer B. Dickey
U.S. CHAMBER LITIGATION CENTER
1615 H Street NW
Washington, DC 20062
(202) 463-5337


*Counsel for the Chamber of Commerce
of the United States of America*

[Additional counsel listed on next page]

</td><td>

Scott A. Keller
  *Counsel of Record*
Steven P. Lehotsky
Jeremy Evan Maltz
LEHOTSKY KELLER COHN LLP
200 Massachusetts Avenue, NW
Suite 700
Washington, DC 20001
(512) 693-8350
scott@lkcfirm.com

*Counsel for Plaintiffs-Appellants*

</td></tr>
</table>

Michael B. Kimberly
Charles Seidell
McDermott Will & Emery LLP
500 N. Capitol Street NW
Washington, DC 20001
(202) 756-8000

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

**Page**

Table of Authorities.............................................................. iii

Introduction.......................................................................1

Argument..........................................................................3

    I.   Maryland's pass-through provision, Md. Code, Tax-Gen. § 7.5-102(c), imposes a content-based ban on protected speech that cannot satisfy any form of heightened First Amendment scrutiny. ...............................................3

        A.  The pass-through prohibition bans speech based on content about prices and political speech, triggering strict scrutiny. .......................................................4

            1.   The pass-through provision regulates only protected speech—not conduct.....................................4

            2.   The Comptroller's "speech integral to conduct" argument relies on mischaracterizing expression about lawful pricing information as pricing conduct. ...........9

        B.  The pass-through prohibition fails any form of heightened First Amendment scrutiny.........................................12

            1.   The pass-through provision fails strict scrutiny. ..................12

            2.   The pass-through provision fails intermediate commercial-speech scrutiny. ..................................15

    II.  The district court misapplied the First Amendment facial-challenge framework, and the Comptroller does not even try to defend key errors made by the district court..........................17

        A.  The Comptroller does not defend the district court's erroneous reliance on circumstances unregulated by the pass-through provision challenged in this First Amendment claim..........................................................17

B.   The Comptroller does not dispute Plaintiffs'
     articulation of the facial-challenge framework or the
     fact that *Moody* did not change this framework. .........................20

C.   The district court should have held that the pass-
     through provision is facially unconstitutional............................22

Conclusion.............................................................................................24

Certificates of Compliance .................................................................26

Certificate of Service ..........................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Ams. for Prosperity Found. v. Bonta,*
 594 U.S. 595 (2021) ............................................................................... 16

*BellSouth Telecomms., Inc. v. Farris,*
 542 F.3d 499 (6th Cir. 2008) ..................... 4, 5, 6, 7, 8, 9, 10, 12, 13, 14, 15, 16

*Brown v. Ent. Merchants Ass'n,*
 564 U.S. 786 (2011) ....................................................................... 12, 14, 15

*City of L.A. v. Patel,*
 576 U.S. 409 (2015) ............................................................................ 18, 20

*Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n of N.Y.,*
 447 U.S. 530 (1980) ............................................................................ 12, 15

*Educ. Media Co. at Virginia Tech v. Insley,*
 731 F.3d 291 (4th Cir. 2013) ................................................................ 12, 16

*Expressions Hair Design v. Schneiderman,*
 581 U.S. 37 (2017) ........................................................................ 3, 4, 5, 11, 12

*Moody v. NetChoice, LLC,*
 603 U.S. 707 (2024) ........................................ 1, 5, 17, 18, 19, 20, 21, 22, 23, 24

*NetChoice, LLC v. Bonta,*
 113 F.4th 1101 (9th Cir. 2024) ...................................................................... 19

*Reed v. Town of Gilbert,*
 576 U.S. 155 (2015) ............................................................................ 12, 13

*Sorrell v. IMS Health Inc.,*
 564 U.S. 552 (2011) ....................................................................................... 16

*United States v. Hansen,*
    599 U.S. 762 (2023) .........................................................................10

*United States v. Playboy Ent. Grp., Inc.,*
    529 U.S. 803 (2000) .........................................................................13

*Wash. State Grange v. Wash. State Republican Party,*
    552 U.S. 442 (2008) .........................................................................23

**Statutes**

Md. Code, Tax-Gen. § 7.5-102 .................................1, 3, 5, 7, 8, 15, 18, 19, 21, 22

Md. Code, Tax-Gen. § 7.5-103 ...........................................................................21

Md. Com. Law § 13-301 ...........................................................................14

Md. Com. Law § 13-303 ...........................................................................14

# INTRODUCTION

The Comptroller does not dispute that the "pass-through provision" of the Maryland Digital Advertising Gross Revenues Tax Act (the "Act"), Md. Code, Tax-Gen. § 7.5-102(c), restricts how business owners may communicate to consumers about their prices and this digital ad tax. *See* Appellee's Br. ("Resp.") at 18 ("this prohibition does restrict speech"). That is protected speech, as the district court correctly held. Yet the district court failed to hold this law facially unconstitutional because it misapplied the First Amendment facial-challenge analysis most recently articulated by the Supreme Court in *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024).

On appeal, the Comptroller does not even respond (*see* Resp.23-26) to issues raised in Plaintiffs' opening brief that show key errors in the district court's facial-challenge analysis. *See* Plaintiffs' Opening Br. ("Br.") at 30-40. The Comptroller does not defend the district court's error in misidentifying the proper "denominator" for the facial-challenge analysis. Br.36-38. This denominator should have included only those circumstances where the challenged pass-through provision applies to restrict business' activities. Br.35-40. So the district court never should have examined (1) other statutory provisions in the Act unchallenged by this First Amendment claim or (2) circumstances unregulated by the challenged pass-through provision where it does not apply at all. *Id.*

Instead, the Comptroller's sole argument is that Maryland's pass-through prohibition does not restrict *protected* speech. The Comptroller strains to defend its obvious violation of the First Amendment by suggesting that the pass-through provision regulates only "unprotected" speech in a way that is integral to the purportedly unlawful conduct of directly passing this tax on to consumers. Resp.11, 13-16.

But this argument suffers from a fatal flaw: The pass-through provision *allows* taxpayers to increase prices by the amount of this tax. *E.g.*, Resp.10 (taxpayer may "indicate[] that the cost of services has increased because of the imposition of the tax"); Resp.15 ("if the taxpayer were to pass on the tax but *not* communicate that fact to the consumer in some fashion, the taxpayer's conduct would fall outside the scope of the pass-through provision"). So the conduct of raising prices to account for the tax is *lawful*.

What is prohibited, in the Comptroller's words, is specific speech about lawfully increased prices: "a taxpayer may . . . state the amount by which they have raised the cost of their services and assign the reason for that increase expressly to the imposition of the digital ad tax"—"so long as they do not express any such 'fee, surcharge, or line-item' as imposing an amount 'separate' from the price of services." Resp.18-19 & n.11.

The Comptroller's "speech integral to unlawful conduct" argument is therefore incurably circular. Businesses can lawfully increase their prices by the amount of the tax—and can even tell consumers this in certain ways. *See id.* The only thing the pass-through provision makes unlawful is speech

expressing these lawful prices as a separate "fee, surcharge, or line-item." *Id.* So by the Comptroller's own definition, the pass-through provision deems "unlawful" only specific speech about lawful prices. A government cannot evade First Amendment scrutiny by defining what a statute makes unlawful as speech itself.

This prohibition therefore violates the First Amendment. *Expressions Hair Design v. Schneiderman*, 581 U.S. 37, 47-48 (2017). The Comptroller does not even try to establish that the pass-through provision satisfies any level of heightened First Amendment scrutiny. This law is therefore facially unconstitutional. The Court should reverse and render judgment for Plaintiffs.

## ARGUMENT

### I. Maryland's pass-through provision, Md. Code, Tax-Gen. § 7.5-102(c), imposes a content-based ban on protected speech that cannot satisfy any form of heightened First Amendment scrutiny.

The pass-through provision of the Act, Md. Code, Tax-Gen. § 7.5-102(c), is a content-based restriction on how businesses may express and describe their prices. Heightened First Amendment scrutiny therefore applies because this law "regulate[s] . . . how sellers may communicate their prices." *Expressions*, 581 U.S. at 47.

The Comptroller's brief does not argue that the pass-through provision satisfies any form of heightened First Amendment scrutiny. Instead, the Comptroller attempts to mischaracterize how a business communicates its prices to consumers as mere unprotected speech integral to purportedly

unlawful conduct. Resp.11. But as the Comptroller's own arguments show, this provision does not prohibit businesses from increasing their prices due to this tax. The pass-through provision just restricts how businesses may "express" those lawful price increases. Resp.19 n.11. So the pass-through provision bans only speech, and it does not render any pricing conduct unlawful.

### A. The pass-through prohibition bans speech based on content about prices and political speech, triggering strict scrutiny.

#### 1. The pass-through provision regulates only protected speech—not conduct.

The First Amendment problems posed by the pass-through provision are inescapable, because the law "regulate[s] . . . how sellers may communicate their prices" and says "nothing about the amount they are allowed to collect" from consumers. *Expressions*, 581 U.S. at 47. When the government "permit[s] providers to raise prices but prohibit[s] them from using their invoices to *say why*," the government "run[s] afoul of the 'freedom of speech' protections of the First (and Fourteenth) Amendment." *BellSouth Telecomms., Inc. v. Farris*, 542 F.3d 499, 500 (6th Cir. 2008) (emphasis added).

**a.** The pass-through provision allows taxpayers to increase prices to recoup the amount of this tax. *See supra* p.2 (quoting Resp.10, 15). The text makes that clear by prohibiting only the passing on of the cost of the tax "by

means of a separate fee, surcharge, or line item." Md. Code Ann., Tax-Gen. § 7.5-102(c). Thus, as the Comptroller acknowledges:

> [A taxpayer may even] include an express tax-recovery fee, surcharge, or line-item on each customer's bill that clearly communicates that prices are going up because of state tax policy, and by how much, . . . *so long as they do not express any such 'fee, surcharge, or line-item'* as imposing an *amount 'separate' from the price of services*.

Resp.19 n.11 (emphases added).

The examples in the parties' briefs prove the point. *See* Br.18, Resp.19 n.11. The pass-through provision does not regulate "the amount that a [taxpayer] could collect." *Expressions*, 581 U.S. at 47. It regulates how a taxpayer may *communicate* that amount. The law prohibits (truthful) statements on an invoice communicating, in the state-disfavored ways of a separate "fee, surcharge, or line-item," that a particular portion of the lawful price charged is due to Maryland's digital ad tax. Md. Code, Tax-Gen. § 7.5-102(c). As the Sixth Circuit put it when analyzing a similar law, the pass-through provision permits taxpayers "to raise prices to account for this additional cost of doing business," but "prohibit[s] them from using their invoices to say why" by "separately stat[ing] the tax on the bill to the purchaser." *BellSouth*, 542 F.3d at 500-01 (citation omitted). And "[i]n regulating the communication of prices rather than prices themselves," so that a taxpayer "may not convey that price any way he pleases," the pass-through provision "regulates speech." *Expressions*, 581 U.S. at 47-48; *see Moody*, 603 U.S. at 732 ("[I]n

overriding a private party's expressive choices[,] the government confronts the First Amendment.").

The provision's (and thus the Comptroller's) focus on whether the tax is listed sufficiently separately from the price stems from the apparent desire to stifle speech about the "*responsibility* for the tax." Resp.15 (emphasis added)*; see* Resp.8, 14, 18, 23. But that just makes this law worse. Communications about "who bears political responsibility" for a price increase are "core political speech." Br.21-22 (quoting *BellSouth*, 542 F.3d at 504-05). Laws restricting this speech are thus subject to strict scrutiny, including when laws restrict the contents of "an invoice that displays a predictable consequence of the tax." Br.22 (quoting *BellSouth*, 542 F.3d at 505).

The Comptroller's argument that such speech not only escapes heightened scrutiny but is unprotected altogether has dangerous implications for fundamental First Amendment protections. Businesses routinely itemize everything from tobacco taxes to environmental disposal fees to public utility commission fees, all showing consumers why prices have increased. The Comptroller's rationale would allow the government to prohibit companies from attributing "responsibility" for price increases to governmental action. Resp.8, 14-15, 18, 23. As the Sixth Circuit rightly observed, "At the same time that the law limits the providers' efforts to duck economic responsibility for a price increase, it permits legislators to duck political responsibility for the new tax." *BellSouth*, 542 F.3d at 505. "It takes little imagination to envision why an elected official would prefer to evade accountability for a tax

increase." *Id*. But the First Amendment does not tolerate government censoring speech asserting that *the government* bears political responsibility for the consequences of enacting this tax. *Id*.

**b.** The district court therefore correctly held that the pass-through provision regulates protected speech by prohibiting taxpayers from expressing increased lawful prices through a "separate" "fee, surcharge, or line item" accurately reflecting the amount of tax paid. JA80, 83.

The district court wrongly posited, however, that it could isolate just the initial portion of Md. Code, Tax-Gen. § 7.5-102(c)—*i.e.*, the text "directly pass[ing] on the cost of the tax imposed." JA80. As a result, the court erroneously held that this isolated text regulates only "non-expressive conduct" that does "not implicate or violate the First Amendment." JA80.

But Maryland did not enact two separate prohibitions—one for just "directly" passing on the tax in any form, and another for "separately" stating that a business is passing on the tax. The pass-through provision prohibits only these two *in combination*: "directly" passing on the tax "*by means of* a separate fee, surcharge, or line-item." Md. Code, Tax-Gen. § 7.5-102(c) (emphasis added). The full scope of this law, therefore, regulates only protected speech.

The Sixth Circuit's *BellSouth* opinion thus cannot save any portion of the law at issue here. *Cf.* Resp.14 (quoting *BellSouth*, 542 F.3d at 510). Unlike the pass-through provision, the Kentucky law in *BellSouth* contained *two separate, disjunctive statutory clauses*, which the court analyzed distinctly:

Kentucky's law provided that a business "shall not [1] collect the tax directly from the purchaser *or* [2] separately state the tax on the bill to the purchaser." *BellSouth*, 542 F.3d at 501 (emphasis added; quoting Ky. Rev. Stat. Ann. § 136.616(3)). The Sixth Circuit held that the latter "separate-statement" clause violated the First Amendment and severed it. *Id.* at 504-11. When it came to interpreting the former clause, the court acknowledged it was "unclear . . . precisely what the direct-collection clause does." *Id.* at 510. Relying on the fact "that the legislature elected to use both [clauses]" disjunctively, the Sixth Circuit concluded that "one way a provider could collect the tax directly from a customer is through a separate statement on the bill" (which the First Amendment protects), "[b]ut that does not mean that the separate-statement clause covers the same conduct as the direct-collection clause." *Id.*

In stark contrast, Maryland's pass-through provision prohibits *only* separate statements directly passing on the tax: "directly" passing on the tax "*by means of* a separate fee, surcharge, or line-item." Md. Code, Tax-Gen. § 7.5-102(c) (emphasis added); *see* Resp.5; JA45. So unlike the Kentucky law in *BellSouth*, Maryland's pass-through provision does not regulate any situation where "one could directly collect the tax without separately stating it." 542 F.3d at 510.

In all events, the Comptroller has not raised any argument that the statutory text "by means of a separate fee, surcharge, or line-item" can somehow be severed from the rest of Md. Code, Tax-Gen. § 7.5-102(c). So any such

argument is forfeited. The entire statutory provision restricts protected speech and is subject to heightened First Amendment scrutiny.

### 2. The Comptroller's "speech integral to conduct" argument relies on mischaracterizing expression about lawful pricing information as pricing conduct.

The Comptroller asserts that words on an invoice are "speech . . . integral to the prohibited conduct" of "directly passing on the cost of the tax" to consumers. Resp.10, 13-16, 25. But the Comptroller's "speech integral to unlawful conduct" theory cannot save the pass-through provision: The pass-through provision does not even regulate the underlying pricing conduct, and Maryland allows businesses to lawfully charge higher prices due to this tax. The Comptroller's argument is therefore wholly circular, as its definition of what the provision bars as unlawful is just the speech itself.

Maryland's pass-through provision allows taxpayers to charge higher prices to account for the digital ad tax, and it does not even ban taxpayers from communicating this fact to consumers in certain ways. *See supra* p.5. Instead, the law bans taxpayers from expressing these lawful prices through a fee, surcharge, or line item separate from the price of services. Resp.19 n.11, 25. Thus, just as the Sixth Circuit reasoned when rejecting a similar argument, "speech about the reasons for these price increases does not advance an illegal transaction" since the law allows taxpayers "to raise prices to account for the new tax." *BellSouth*, 542 F.3d at 506.

The covered speech—clearly identifying for consumers the increased lawful price due to the tax—cannot possibly be "intended to bring about a particular unlawful act." *United States v. Hansen*, 599 U.S. 762, 783 (2023). It is intended to tell consumers the truth about a *lawful* price increase that taxpayers can make. *See supra* p.5; *see also* Br.27. Government cannot decree that such a truthful communication about lawful pricing gets no First Amendment review by pretending that this is merely conduct rather than protected speech. Or as the Sixth Circuit put it, the "[State's] faint-hearted argument that the line item tax description[] concern[s] an unlawful activity because the line items would violate the speech ban . . . simply chases the [State's] tail," and "[t]he lawfulness of the activity does not turn on the existence of the speech ban itself." *BellSouth*, 542 F.3d at 506.

The Comptroller is thus forced to mischaracterize speech expressing truthful, lawful pricing information to consumers as the "prohibited conduct" of "directly passing on" the tax. Resp.10, 13-16, 25. The Comptroller describes the purported conduct as "*structuring the transaction* so that the consumer is responsible for the tax," Resp.14, and "*imposing the cost* of the digital ad tax through means 'separate' from the price charged for its services," Resp.23 (emphases added). But the Comptroller's euphemisms for expressing lawful price increases cannot change the fact that the pass-through provision does not regulate what prices businesses can charge. In other words, the pass-through provision does not regulate pricing conduct about "structuring," "imposing," or collecting costs through higher prices

due to the tax. It regulates only how taxpayers may communicate these higher lawful prices to consumers.

The Comptroller's attempts to distinguish on-point precedent depend wholly on this artificial construct. In *Expressions*, for example, the Supreme Court concluded that the challenged credit-card surcharge ban regulated speech and not conduct, because it was "not like a typical price regulation" that "would simply regulate the amount that a store could collect." 581 U.S. at 47; Br.17. The Comptroller insists that unlike the ban in *Expressions*, this "pass-through provision *does* regulate what a taxpayer 'could collect' from a consumer," because in prohibiting taxpayers from "directly pass[ing] on" the cost of the tax, the provision "in effect, limit[s] th[e] amount [of the digital ad tax collected from consumers] to zero." Resp.22. This distinction is illusory. Just as in *Expressions*, this law "tells merchants nothing about the *amount* they are allowed to collect," because they are free to collect *all* of the tax's amount from consumers by charging higher prices equal to the tax paid. 581 U.S. at 47. "What the law does regulate is how sellers may communicate" to consumers about their increased prices collecting this amount of tax paid. *Id*.

Likewise, citing *BellSouth*, the Comptroller insists that this Maryland provision permits taxpayers to "say whatever they want about the tax"—"so long as" they do not "identify the cost of the digital ad tax as . . . 'separate' from the cost of services." Resp.18. But even if this Maryland law allowed taxpayers to speak in *some* ways about this tax, that is irrelevant to whether

it violates the First Amendment when it restricts speech in *other* ways: The Supreme Court has "consistently rejected the suggestion that a government may justify a content-based prohibition by showing that speakers have alternative means of expression" available. *Consol. Edison Co. of N.Y. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 530, 541 n.10 (1980); *accord BellSouth*, 542 F.3d at 510. There is no meaningful difference between the speech restrictions in *Expressions* and *BellSouth* and the pass-through provision in this case. Maryland's law, too, violates the First Amendment.

## B. The pass-through prohibition fails any form of heightened First Amendment scrutiny.

Because the pass-through provision restricts speech based on its communicative content, it is "presumptively unconstitutional." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). The provision can be upheld "only if the government proves that [it is] narrowly tailored to serve compelling state interests." *Id.* And "[e]ven if strict scrutiny is inapplicable, the challenged regulation fails, on its face, to satisfy the Supreme Court's *Central Hudson* test, which subjects non-misleading commercial speech to intermediate scrutiny." *Educ. Media Co. at Virginia Tech v. Insley*, 731 F.3d 291, 295 (4th Cir. 2013). The Comptroller does not argue that the provision survives either level of scrutiny—and has therefore forfeited any such argument.

### 1. The pass-through provision fails strict scrutiny.

Strict scrutiny "is a demanding standard." *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 799 (2011). "It is rare that a regulation restricting speech because

of its content will ever be permissible." *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 818 (2000).

The Comptroller does not clearly identify any interest of the "highest order" that could satisfy strict scrutiny. *Reed*, 576 U.S. at 172. The Comptroller suggests in passing that the State has an interest in "prohibit[ing] the taxpayer from structuring the transaction so that the consumer is responsible for the tax." Resp.14. But businesses *may* "pass[] on the cost of the tax . . . by factoring such cost into its customer pricing." Resp.16 (quoting JA45). So this law does not further any possible interest in preventing businesses from passing on the tax to consumers.

Nor does the Comptroller point to any compelling interest in prohibiting the *truthful* speech regulated by the pass-through provision. The Comptroller does not, for example, assert any interest in prohibiting *misleading* surcharges or suggest that this law might possibly address any hypothetically misleading speech. That makes perfect sense. After all, the Comptroller acknowledges that this law applies only when a taxpayer "directly" passes the tax on to consumers. Resp.11, 16-18. In other words, this law only applies when the taxpayer is increasing its prices due to the tax. The law cannot possibly apply to any scenario where the State might allege that a taxpayer is misleading consumers. *See* Br.28-29. Just as in *BellSouth*, the proposed speech here is "truthful and verifiable": The State "in fact imposed a [multi-tiered] tax on [digital ad services providers]; the providers in fact [may] increase[] prices to absorb the tax; and, so far as the record shows, the providers in fact

intend to send invoices that will accurately show the amount by which the new tax increases prices." 542 F.3d at 506.

Regardless, even if the Comptroller had raised any concern about misleading speech, the pass-through provision would be wildly overinclusive to that concern. Misleading statements in commercial transactions are already banned by the Maryland Consumer Protection Act, Md. Com. Law § 13-303(2), and Unfair or Deceptive Trade Practices Act, *id*. § 13-301(1). *See* Br.29. The Sixth Circuit recognized this same point about the "Kentucky Consumer Protection Act" when invalidating that speech restriction. *BellSouth*, 542 F.3d at 508.

There are many more tailoring flaws with the pass-through provision. It is "wildly underinclusive" to furthering any governmental interest posited by the Comptroller. *Brown*, 564 U.S. at 802. As to any interest in "prohibit[ing] the taxpayer from structuring the transaction so that the consumer is responsible for the tax," Resp.14, or from "imposing the cost of the digital ad tax" on consumers, Resp.23, the law leaves open numerous ways for taxpayers to charge increased prices recouping the tax from consumers. Indeed, the taxpayer may "factor[] [the] cost" of the tax into increased prices charged to consumers. Resp.5; JA45.

The State also lacks a sufficient interest in preventing taxpayers from *informing* consumers of the truthful reasons for their increased lawful costs. And the pass-through provision would be wildly underinclusive for furthering any such interest. As the Comptroller reiterates, the provision does not

prohibit a taxpayer from "stat[ing] the amount by which they have raised the cost of their services and assign[ing] the reason for that increase expressly to the imposition of the digital ad tax," so long as they do not style "any such 'fee, surcharge, or line item' as imposing an amount 'separate' from the price of services." Resp.18-19 & n.11. So although the provision bans the clearest means of communicating that prices increased due to this tax, it does not ban taxpayers from communicating the *same information* to consumers more opaquely. *See Consol. Edison Co.*, 447 U.S. at 541 n.10 (government "may [not] justify content-based prohibition by showing that speakers have alternative means of expression"); *accord BellSouth*, 542 F.3d at 510.

A government interested in regulating pricing *conduct* would not pass a law addressing only the *expression* of lawful prices as a "separate fee, surcharge, or line item." Md. Code, Tax-Gen. § 7.5-102(c). That confirms this law is all about restricting speech and massively underinclusive to furthering any possible interest the State could have in regulating pricing. *See Brown*, 564 U.S. at 802 ("Underinclusiveness raises serious doubts about whether the government is in fact pursuing the interest it invokes.").

### 2. The pass-through provision fails intermediate commercial-speech scrutiny.

Strict scrutiny applies because this law restricts core political speech, as explained above (at 5-6). *See* Br.20-22. In any event, this content-based speech ban also fails any other level of heightened First Amendment scrutiny.

Even under the commercial-speech doctrine, the State still must show that the statute "directly advances a substantial governmental interest and that the measure is drawn to achieve that interest." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 572 (2011). There must be a "fit between the legislature's ends and the means chosen to accomplish those ends." *Id.* (citation omitted). Accordingly, here "the outcome is the same whether a special commercial speech inquiry or a stricter form of judicial scrutiny is applied"—the content-based speech restriction violates the First Amendment. *Id.* at 571.

As explained in detail above (at 13-14) and in Plaintiffs' opening brief (Br.27-30), the Comptroller has not identified any "substantial" interest in preventing businesses from passing on the cost of the digital ad tax or in speaking truthfully about those lawful price increases. Commercial-speech cases often tout the importance of protecting consumers from misleading speech, but the Comptroller "nowhere argues that the [taxpayers' proposed] speech is false." *BellSouth*, 542 F.3d at 506; *see supra* p.13.

Nor can the Comptroller demonstrate sufficient tailoring. To survive intermediate scrutiny "the party defending the regulation 'must demonstrate narrow tailoring of the challenged regulation to the asserted interest'"—that the "scope is in proportion to the interest served." *Insley*, 731 F.3d at 300 (citation omitted); *see Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 609 (2021) (intermediate scrutiny requires a "means narrowly tailored"). The Comptroller has not even tried to do this. There is no indication in the record or in the Comptroller's brief that banning taxpayers from informing consumers

about lawful price increases due to the tax in a separate line-item will prevent taxpayers from (permissibly) recouping the cost of the tax or from otherwise informing consumers about the tax. For these reasons, barring taxpayers from conveying truthful information about lawful price increases due to the tax is not narrowly tailored to furthering any sufficient governmental interest. *See supra* pp.14-15.

## II. The district court misapplied the First Amendment facial-challenge framework, and the Comptroller does not even try to defend key errors made by the district court.

The Comptroller also refrains from defending the errors made by the district court's facial-challenge analysis. *See* Br.35-40. Nor does the Comptroller dispute that *Moody* did not change the facial-challenge framework in the First Amendment context. *See* Br.30-33. Nevertheless, these errors require this Court's correction to ensure that future cases do not repeat them. If the district court had properly analyzed the pass-through provision based on the actual applications of this provision, Plaintiffs would have prevailed on their facial challenge.

### A. The Comptroller does not defend the district court's erroneous reliance on circumstances unregulated by the pass-through provision challenged in this First Amendment claim.

The Comptroller's only arguments about the facial-challenge standard, Resp.23-26, simply repeat her merits arguments asserting that the pass-through provision only regulates "speech [that] is integral to the prohibited

conduct of 'directly pass[ing] on' the digital ad tax to consumers." Resp.25. Those arguments are incorrect, for all the reasons explained above. *See supra* Part I.A. Regardless, those merits arguments cannot rehabilitate the district court's key errors in evaluating the facial-challenge framework.

For example, the Comptroller provides no response to the district court misidentifying the proper "denominator" for the facial-challenge analysis. Br.36. The district court did so by incorrectly examining circumstances un-regulated by the pass-through provision where it does not apply at all. Br.35-40. To put this in doctrinal terms, the district court looked *beyond* what the challenged pass-through "law[] prohibit[s] or otherwise regulate[s]"—that is, where the pass-through provision actually has "applications" to determine whether those applications violate the First Amendment. *Moody*, 603 U.S. at 724. Such circumstances *outside* the challenged law's "scope" have no bearing on any part of the facial-challenge analysis. *Id.*; *accord City of L.A. v. Patel*, 576 U.S. 409, 418-19 (2015) (facial-challenge analysis examines only "actual applications of the statute" where "the law is a restriction").

The district court's error is plain on the face of its opinion. Although Plaintiffs' First Amendment claim challenged only Section 7.5-102(c) of the Act, the district court reasoned that "Maryland unquestionably possesses the power to levy taxes" and to "generate revenue." JA85. While true, this statement is irrelevant. Plaintiffs' First Amendment challenge to the pass-through provision does not challenge Maryland's ability to impose this tax and generate revenue. Sections 7.5-102*(a)* and *(b)* exercise these powers. But

this First Amendment claim is against Section 7.5-102*(c)*. "The State cannot insulate a specific provision of law from a facial challenge under the First Amendment by bundling it with other, separate provisions that do not implicate the First Amendment." *NetChoice, LLC v. Bonta*, 113 F.4th 1101, 1117 (9th Cir. 2024). The district court's facial-challenge analysis therefore should have focused solely on applications of the "specific provision" challenged by this First Amendment claim: Section 7.5-102(c). *Id.*

Nor does the Comptroller try to defend the district court's reliance on circumstances where the challenged pass-through provision has no "applications." Br.36-37 (discussing *Moody*, 603 U.S. at 724-25). The pass-through provision *only* prohibits taxpayers from communicating increased lawful prices due to paying this digital ad tax as a separate fee, surcharge, or line-item. Resp.18; JA85. This is the full "scope" of the pass-through provision's "applications," so this is the only set of circumstances relevant to this facial-challenge analysis. *Moody*, 603 U.S. at 724-25. Yet, in conducting the facial-challenge analysis, the district court credited multiple scenarios unregulated by the pass-through provision where it does *not* apply:

- "[T]he statute does not prohibit a taxpayer from expressing its views or opinions about the tax imposed by the DATA in an invoice or bill, or otherwise."

- "Nor does the statute restrict or prohibit a taxpayer from communicating that an invoice or bill is for a higher amount, due to the imposition of the DATA's tax."

- "There is similarly no restriction on speech under the statute when a taxpayer does not directly pass on the tax cost to its customer."

JA86; *see* Br.37.

The district court correctly recognized that the pass-through provision does not apply to these situations, as "the statute does not prohibit" them. JA86. Nevertheless, the district court erroneously included them as part of the facial-challenge analysis "denominator" by treating them as "*applications* of the Pass-Through Prohibition." *Id.* (emphasis added). They are not. They are "irrelevant to [the facial-challenge] analysis because they do not involve actual applications of the statute," but rather circumstances the pass-through provision does *not* regulate. *Patel*, 576 U.S. at 419. The district court's facial-challenge analysis was thus fatally flawed.

## B. The Comptroller does not dispute Plaintiffs' articulation of the facial-challenge framework or the fact that *Moody* did not change this framework.

The Comptroller does not dispute that "*Moody* broke no new First Amendment ground." Br.30-32; *see Moody*, 603 U.S. at 727-28 ("Despite the relative novelty of the technology before us, the main problem in this case—and the inquiry it calls for—is not new."). Nor does the Comptroller disagree with Plaintiffs' articulation of the facial-challenge standards. Br.30-33.

*Moody* reaffirmed, rather than revised, the law governing First Amendment facial challenges. *See* Br.30. In analyzing a facial challenge to "two state laws regulating social-media platforms and other websites," 603 U.S. at 717, the Court explained that the "first step" is to "assess the state law's scope,"

*id*. at 724. In other words, "[w]hat activities, by what actors, do the laws prohibit or otherwise regulate?" *Id*. "The next order of business," the Court explained, "is to decide which of the laws' applications violate the First Amendment, and to measure them against the rest." *Id*. at 725. The Court in *Moody* ultimately concluded that it could be unclear what "actors" or "activities"—in that case, which "websites" or "functions"—were covered by the particular law challenged in those cases. *Id*. at 724. So it remanded for the courts below to conduct that analysis in the first instance. *Id*. at 725-26.

Here, there is no dispute about "what actors" and "what activities" the challenged pass-through law regulates. *Id*. at 724. The Comptroller agrees that the pass-through provision covers entities "who derive[] gross revenues from digital advertising services in the State," Md. Code, Tax-Gen. § 7.5-102(c), if they have "global annual gross revenues of $100,000,000" or more, *id*. § 7.5-103. *See* Br.4-5; Resp.2.

The parties also agree on the scope of the legal duties imposed by the pass-through provision. It does not prohibit "factoring the estimated cost of the tax into the price that it ultimately charges its customers." Br.26, 27-29; Resp.8 (quoting JA50), 18-19. Nor does it prohibit taxpayers from communicating to consumers in certain ways that prices were lawfully increased due to the tax. Br.26, 27-29; Resp.8 (quoting JA50), 18-19 The pass-through provision only bans taxpayers' communication about increased lawful prices due to this tax via a "separate" fee, surcharge, or line item. Br.26, 27-29; Resp.8 (quoting JA50), 18-19.

The Comptroller's brief does not argue that the district court errone-ously omitted any "actor[]" or "activit[y]" in assessing the pass-through pro-vision's "scope." *Moody*, 603 U.S. at 724. This Court therefore has everything it needs to "undertake the needed inquiries" for reviewing the district court's facial-challenge ruling. *Id.* at 726.

## C. The district court should have held that the pass-through provision is facially unconstitutional.

If the district court had properly examined only those circumstances when the pass-through provision applies by restricting taxpayers' activities, it should have sustained Plaintiffs' facial challenge. Plaintiffs prevail under both the traditional "no-set-of-circumstances" facial-challenge standard, Br.33-34, and the First Amendment's unique comparative facial-challenge standard. Br.38-40.

To begin, "no set of circumstances exists under which the" pass-through provision "would be valid." *Moody*, 603 U.S. at 723 (citation omitted). As ex-plained above, the pass-through provision applies only when taxpayers in-crease prices due to the tax and communicate this to consumers "by means of a separate fee, surcharge, or line-item." Md. Code, Tax-Gen. § 7.5-102(c). The district court thus erred by examining circumstances wholly unregu-lated by the pass-through provision. *See supra* Part II.A. And it also erred by isolating the "directly pass on the cost of the tax" portion of Md. Code, Tax-Gen. § 7.5-102(c) from the "by means of a separate fee, surcharge, or line-item" statutory text. *See supra* pp.7-8.

With the relevant scope identified, the pass-through provision violates the First Amendment *in all applications*. The pass-through provision prohibits taxpayers from expressing lawful prices using a "separate fee, surcharge, or line-item." JA80, 85; *see supra* Part I. Those circumstances are the entire "scope" of the pass-through provision's "applications." *Moody*, 603 U.S. at 724. And the First Amendment prohibits the law in all of those applications. As such, the pass-through provision is facially unconstitutional under even the traditional "no set of circumstances" standard for any constitutional claim. *Id.* at 723 (citation omitted).

The district court therefore did not even need to undertake the unique comparative facial-challenge analysis that can also sustain a First Amendment facial challenge. *See* Br.33-34, 39. If, as the Comptroller argues, the pass-through provision restricts only unprotected speech integral to unlawful conduct (which it does not), then the First Amendment claim would fail in all applications.[1] And if, as Plaintiffs argue, the pass-through provision

_____

[1] The Comptroller does not argue that the challenged pass-through provision regulates both some protected speech as well as some unprotected speech or non-expressive conduct. That scenario is where the unique First Amendment facial-challenge comparative analysis could reach a different result than the no-set-of-circumstances standard. *See* Br.3, 13, 31. In all events, a facial challenge cannot be defeated under this First Amendment comparative analysis by trying to speculate about outlier "hypothetical" or "imaginary" cases. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449-50 (2008).

restricts only protected speech about lawful prices, then there is "no set of circumstances" in which the law is valid. *Moody*, 603 U.S. at 723. As explained above, the pass-through provision is not sufficiently tailored to furthering any sufficient governmental interest. *See supra* Part I.B. That constitutional defect will arise each and every time the pass-through provision is applied to restrict taxpayers' speech about lawful prices. *See* Br.31. And when a law violates the First Amendment in all applications, *a fortiori* "the law's unconstitutional applications substantially outweigh its constitutional ones," which will be a null set. *Moody*, 603 U.S. at 724; *see* Br.31. Plaintiffs therefore prevail under both the traditional and the unique First Amendment comparative facial-challenge standards.

## CONCLUSION

This Court should reverse the judgment of the district court dismissing Plaintiffs' claim and render judgment for Plaintiffs.

Respectfully submitted.

*/s/ Scott A. Keller*

Tara S. Morrissey

Jennifer B. Dickey

U.S. CHAMBER LITIGATION CENTER

1615 H Street NW

Washington, DC 20062

(202) 463-5337

Scott A. Keller

   *Counsel of Record*

Steven P. Lehotsky

Jeremy Evan Maltz

LEHOTSKY KELLER COHN LLP

200 Massachusetts Avenue, NW

Suite 700

Washington, DC 20001

*Counsel for the Chamber of Commerce of the United States of America*

Michael B. Kimberly

Charles Seidell

MCDERMOTT WILL & EMERY LLP

500 N. Capitol Street NW

Washington, DC 20001

(202) 756-8000

*Counsel for Plaintiffs-Appellants*

## CERTIFICATES OF COMPLIANCE

Undersigned counsel certifies that this brief complies with the type-volume limitations in this Court's Local Rules and the Federal Rules of Appellate Procedure because it contains 5,711 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in proportionally spaced typeface: 14-point Palatino Linotype font.

Dated: March 17, 2025

*/s/ Scott A. Keller*
Scott A. Keller

## CERTIFICATE OF SERVICE

I certify that on March 17, 2025, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

*/s/ Scott A. Keller*
Scott A. Keller